HAWKINS, Justice, for the Court:
The parties to this direct appeal from an order of the Mississippi Public Service Commission are the State of Mississippi, upon the relation of the Honorable Edwin Lloyd Pittman, Attorney-General (Attorney-General), the appellant, and the Mississippi Public Service Commission (Commission) and South Central Bell Telephone Company (SCB), the appellees.
As a historical note, this case is the first case in which there has been a direct appeal from an order of the Commission to this Court under the Mississippi Constitution, Article VI, § 146, as amended November 8, 1983; Miss.Code Ann. § 9-3-9 (1984 Supp.); and under the 1983 Mississippi Public Utilities Act, Ch. 467, Laws 1983, *303 Miss.Code Ann. § 77-3-1, et seq., (1983 Supp.), which created new sections of the code and amended others pertaining to public utilities. It is also the first telephone rate case since the American Telephone and Telegraph Company (AT & T) was required by a United States District Court to divest itself of its local service corporations, of which SCB was one.[1] It is the second time this Court has considered an appeal from a rate order in which the Attorney-General found himself in disagreement with the Commission. State, ex Rel. v. Miss. Pub. Ser. Comm., 418 So.2d 779 (Miss.1982); State, ex Rel. v. Miss. Pub. Ser. Comm., 435 So.2d 608 (Miss.1983).
The Attorney-General has appealed from the final order of the Commission on March 16, 1984, awarding a considerably reduced rate increase from that initially requested by SCB. The major issue we address on this appeal is whether the order of the Commission is supported by substantial evidence. Concluding it was, we affirm.
FACTS
Prior to January 1, 1984, SCB was one of a number of AT & T subsidiaries, called the “Bell System.” By order of the United States District Court dated August 24, 1982, SCB, effective January 1,1984, would no longer be a subsidiary of AT & T. SCB is presently a subsidiary of Bell South Corporation.[2]
As a result of the United States District Court order, SCB in Mississippi was divided into two Local Access Transport Areas (LATAs), the south LATA comprising Jackson, Harrison, and Hancock counties, and the north LATA comprising the rest of the state. After January 1,1984, SCB could no longer provide long distance service across a LATA boundary or interstate. Also, SCB could no longer provide telephones used by customers, all customer premise equipment (CPE) being transferred to a subsidiary corporation of AT & T. SCB was required to furnish access to its lines and facilities to all other carriers at a regulated charge. Because of these and other mandated changes in the organization and operations in all the Bell System, SCB on November 18, 1983, filed its Notice of Intent to increase rates, effective January 1, 1984, to produce $131,443,000 additional revenue, as provided under Miss.Code Ann. §§ 77-3-77 and 77-3-39 (1983 Supp.), and also moved for emergency relief. There was no objection to emergency relief and the Commission on December 20, 1983, issued its order granting temporary rate relief authorizing SCB to generate additional revenue in the amount of $25,149,000.
By order of December 13, 1983, the Commission established procedural steps for handling this case. Prehearing conference and discovery deadline dates were set, the date for the Commission staff and inter-venors to file testimony and exhibits was set, and finally the date of public hearing was set. A later procedural order was entered January 3, 1984, delaying the various date settings.
SCB had filed with its notice the direct testimony and exhibits which constituted its case-in-chief at the final hearing.
In the 1983 Act, provision is made for the Commission to have a staff to make recommendations in rate cases. Miss.Code Ann. §§ 77-3-8 and 77-3-37(8) (1983 Supp.). The Commission engaged Stephen P. Wolfe, president of Fineco Consulting Services, Inc., to assist its staff and to make recommendations. Following a two-day pre-hearing conference between SCB and the Commission staff, attended by the Attorney-General, and in accordance with Miss.Code Ann. § 77-3-47 (1983 Supp.), *304 stipulations between the Commission and SCB were made. One result of these stipulations was SCB reduced its proposed revenue requirement from $131,443,000 to approximately $86,000,000.
Public hearings were conducted February 15 through the 24th. On March 16, 1984, the Commission entered its order approving a rate that would generate an increase in revenue in 1984 of $57,374,000, thus increasing the $25,149,000 interim rate increase by $32,225,000.
LAW
The record in this case reveals thorough investigation by the Commission, an appearance by all interested parties, and a commendable concern by the Commission to scrupulously adhere to the public utility statutes and our decisions.
The Commission had the benefit of expert witnesses from SCB, the Attorney-General and its own staff. C.J. Lathram, assistant chief accountant for SCB, testified on its behalf; William W. Dunkel and Michael D. Dirmier testified as expert witnesses on behalf of the Attorney-General; and Stephen D. Wolfe testified as the Commission’s own witness. While all these witnesses were qualified experts in their field, Dunkel had the most impressive credentials.
In an order over fifty pages in length, the Commission reviewed the entire case and reasons were given for each of its findings.
The Attorney-General has favored this Court on this appeal in confining the issue to one area of disagreement between Dunk-el and Lathram and Wolfe.
Dunkel illustrated the problem with a simple example. A telephone may be used to place a local call, which is governed by the Commission, while a long distance interstate call over that same telephone is governed by the Federal Communications Commission (FCC). Other facilities of the telephone company, such as switching equipment, local loops, interoffice trunks may be used to provide services which are under the authority of both commissions. The company’s accounting records are kept on a basis of the total cost of the facility. Assume the cost of a telephone at $30. Since the telephone is used in services under the jurisdiction of the state and federal governments, some procedure must be devised to allocate the costs between the two. This process which divides the cost of the facilities and expenses between the two authorities is “jurisdictional separations.”
In Smith v. Illinois Bell Telephone Co., 282 U.S. 133, 51 S.Ct. 65, 75 L.Ed. 255 (1930), the U.S. Supreme Court stated:
The proper regulation of rates can be had only by maintaining the limits of state and federal jurisdiction, and this can not be accomplished unless there are findings of fact underlying the conclusions reached with respect to the exercise of each authority.
Id. at 148, 51 S.Ct. at 68.
... While the difficulty in making an exact apportionment of the property is apparent, an extreme nicety is not required, only reasonable measures being essential.... it is quite another matter to ignore altogether the actual uses to which the property is put.
Id. at 150-151, 51 S.Ct. at 69.
Implementation of Smith v. Illinois Bell, supra, is controlled by a Separations Manual consisting of rules adopted by the Joint Board and FCC, which was established by the United States Congress. The Board is composed of members of the various state public service commissions (National Association of Regulatory Utility Commissioners), and the FCC. This manual was adopted in 1947, following which there were five revisions, the latest being the 1970 Ozark Plan. See also: MCI Telecommunications Corp. v. FCC, 242 U.S.App. D.C. 287, 750 F.2d 135, pp. 137-138 (D.C.Cir.1984).
Dunkel testified that historically the intrastate separation factor for SCB had been 69.43%; that is, the percent of SCB’s facilities, called plant in service, allocated to intrastate service. ■ This intrastate separation factor had been increased in SCB’s *305 rate increase request to an estimated post-divestiture separation factor of 77.24%. In his opinion this was far in excess of any change that could be calculated based upon divestiture. While SCB increased the intrastate separation factor 7.81% for Mississippi, the request by Northwestern Bell in Minnesota was 1%, by New Jersey Bell was 1.06%, and .5% to 1.0% by Southwestern Bell in Arkansas.
Dunkel also considered the separation factor as to the other equipment, and his conclusion was that altogether, the appropriate separation factor should be no greater than 71.99%, as compared to 77.24% estimated by SCB.
Wolfe disagreed with Dunkel on this estimate, being of the view there would be a drastically different allocation required by SCB than by AT & T, and that the historical basis of 69.43% was not an accurate reflection of estimated investment and cost.
In rebuttal Lathram gave specific reasons for disagreeing with the analysis of Dunkel. He said the historical basis Dunk-el used in making a determination of intrastate investment did not apply to SCB in Mississippi. He explained how SCB in this state would lose more than is the case in the other four SCB states. He estimated SCB in Mississippi could lose approximately 70% of the circuit miles carrying toll traffic and only 15% of the cost of those circuit miles. Lathram had exhibits explaining and supporting his conclusion that the post-divestiture percentage was reasonable.
The Commission accepted the views of Wolfe and Lathram. The question before us is not which expert’s view we would have accepted, but whether the Commission acted within its statutory authority in rejecting Dunkel’s opinion and adopting Wolfe’s and Lathram’s.
So long as the Commission examined and considered the evidence and testimony of each expert witness, the Commission was within its statutory authority in accepting or rejecting all or any portion of any expert’s opinion. This Court in such a case cannot disturb the Commission’s ruling.
We do not in this opinion attempt to make any in-depth explanation of the involved calculations of these experts, or the technical terms. It would serve no purpose, because it is clear from this record the Commission had before it Dunkel’s testimony and the basis therefor, and also Lathram’s and Wolfe’s testimony concerning Dunkel’s opinion and the reasons they disagreed with it. This is not a case in which the Commission, in reaching a decision, ignored salient and substantial factors offered into evidence See: State, ex rel Allain v. Miss. Public Ser. Comm., 435 So.2d 608 (Miss.1983). The Commission had before it the whole ball of wax. It was clearly the Commission’s prerogative on this disputed issue to adopt whichever expert’s view it chose to give credence to.
The Commission, with its expertise, is the trier of facts and within this province it has the right to determine the weight of the evidence, the reliability of estimates and the credibility of the witnesses. The Commission is free to accept or reject recommendations of any of the witnesses. State of Mississippi, ex rel. v. Miss. Pub. Ser. Comm., 435 So.2d 608 (Miss.1983); Miss. Pub. Ser. Comm.v. Miss. Power Co., 429 So.2d 883 (Miss.1983); Miss. Pub. Ser. Comm. v. Miss. Power Co., 337 So.2d 936 (Miss.1976); Capital Electric Power Assoc. v. Miss. Power & Light Co., 216 So.2d 428 (Miss.1968); and Southern Bell Telephone & Telegraph Co. v. Miss. Pub. Ser. Comm., 237 Miss. 157, 113 So.2d 622 (1959).
In the most recent case of Miss. Pub. Ser. Comm. v. South Central Bell Telephone Co., 464 So.2d 1133 (Miss.1984), Justice Bowling stated:
The legislature wisely has provided personnel and funds for the operation of the three-man public service commission. For example, the budget for that commission including its 115 full-time employees and staff members, for the current year is approximately $3,000,000 more than the budget for this nine-man *306 court and its limited staff. The reason for this is obvious. The many staff members of the Public Service Commission, in addition to those hired under the contractual services budget allowances, permits and indeed requires the Public Service Commission to have experts available at all times in all fields of utility regulations and necessary implementation thereof, such as finance, corporate structure, etc.
Moreover, it should be noted the order of the Commission in this case covered a transitional stage of a major public utility. If the 77.24% intrastate separation factor accepted by the Commission was in error, events and experience will reveal it; and, there will be ample opportunity to make appropriate corrections and adjustments.
Complaint is also made on this appeal because the Commission at the hearing cut off the Attorney-General’s cross-examination of Wolfe concerning his professional qualifications as compared to Dunk-el’s. We find no reversible error was committed in the Commission’s terminating the cross-examination of Wolfe on this subject. This was not a jury case; the Commission was fully familiar with the professional qualifications of Wolfe. Nothing would have been served by repeating before the Commission at the hearing what was already a matter of public record.
Finding the order of the Commission supported by substantial evidence and was not arbitrary, we affirm.
AFFIRMED.
PATTERSON, C.J., WALKER, and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.

. United States v. American Tel. & Tel. Co., 552 F.Supp. 131 (D.D.C.1982)

. SCB, along with Southern Bell, are now subsidiaries of BellSouth Corporation, a regional holding company. BellSouth Corporation has other subsidiary corporations having varied functions. Some of these are: BellSouth Services, Inc., BellSouth Advertising & Publishing Corporation, BellSouth Mobility, Inc., BellSouth Advanced Systems, Inc.
SCB comprises Mississippi, Tennessee, Kentucky, Alabama and Louisiana. Southern Bell comprises Florida, Georgia, South Carolina and North Carolina.