598 So.2d 778 (1992)
MISSISSIPPI PUBLIC SERVICE COMMISSION & Jones Truck Lines, Inc.
v.
MERCHANTS TRUCK LINE, INC., Shippers Express, Inc., & AAA Cooper Transportation.
No. 07-CC-59556.
Supreme Court of Mississippi.
April 22, 1992.
Wm. Bruce McKinley, Fred W. Johnson, Jr., Pyle Dreher Mills & Woods, James C. Mingee, III, Jackson, for appellants.
John A. Crawford, Harold D. Miller, Jr., Butler Snow O'Mara Stevens & Cannada, Jackson, for appellees.
Before ROY NOBLE LEE, C.J., and ROBERTSON and McRAE, JJ.
McRAE, Justice, for the Court:
This case involves a petition by Jones Truck Lines, Inc. ("Jones") seeking a certificate of convenience and necessity to enable it to engage in intrastate shipping. Having denied two previous Jones petitions, the Mississippi Public Service Commission ("PSC") granted Jones' instant request. Protesting carriers Merchants Truck Line, Inc., Shippers Express, Inc., *779 and AAA Cooper Transportation (hereinafter referred to collectively as "protesting carriers") appealed to the Circuit Court of Hinds County. The circuit court reversed, holding that the PSC's ruling was not supported by substantial evidence. Jones, along with the PSC, has appealed. Each party has framed the issues somewhat differently. For purposes of this appeal, we have distilled the various issues to their neutral essence and phrased them in accordance with the parties' arguments as follows:
I. ARE THE FIRST TWO RULINGS OF THE PSC RES JUDICATA, AND IF SO, IS THE RES JUDICATA BAR LIFTED BY A MATERIAL CHANGE IN CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DENIAL OF JONES' FIRST TWO PETITIONS?
II. DOES THE RECORD CONTAIN SUBSTANTIAL EVIDENCE THAT A GRANT OF AUTHORITY TO JONES IS BOTH "CONVENIENT" AND "NECESSARY"?
III. IF THE RECORD LACKS SUBSTANTIAL EVIDENCE TO SUPPORT JONES' PETITION, MAY THE PSC BASE ITS RULING ON EXTRINSIC FACTS?
We reverse and hold that the PSC's Order granting Jones a certificate of Public Convenience and Necessity was justified by substantial evidence appearing in the record.

PROCEEDINGS BELOW
In 1983, Jones filed an application with the PSC ("Jones I") for a Certificate of Public Convenience and Necessity as a restricted common carrier by motor vehicle, intrastate, transporting general commodities between all points and places over irregular routes within the State of Mississippi. The PSC denied the application. Jones appealed the denial to the Circuit Court of Hinds County, but the Circuit Court affirmed the denial.
On December 19, 1984, Jones filed a second application ("Jones II"). The PSC entered a final denial on December 12, 1985, and Jones did not appeal the ruling.
On June 24, 1986, Jones filed its third petition ("Jones III"), the one out of which the instant appeal arises. The PSC granted the petition on October 24, 1986. Following an appeal by the protesting carriers, the circuit court reversed the PSC's ruling and ordered cancellation of the certificate. In his Opinion and Order, the circuit court judge stated:
Although this court can find no Mississippi authority directly on point, the Mississippi Supreme Court has held that in zoning cases, once a factual decision has been made, that decision is res adjudicato [sic] in the absent [sic] of proof of a material change. There is no reason for not applying this doctrine to decisions of the Public Service Commission. Indeed the need for public confidence in its officials demands consistency. Appellee [Jones and PSC] apparently accepts this fact by arguing that the evidence shows a material change following the previous denials of identical applications... . This court has reviewed the record, the abstracts of both Appellants and Appellees, and finds no substantial evidence of a material change subsequent to December 12, 1985, the date of the denial of the second application, that would justify the granting of the petition.
The circuit court judge expressed his regrets concerning "the delay in reaching a decision in this matter," but the delay is understandable considering the size of 2080-page record. At the hearing of the Jones III petition, the PSC heard extensive testimony from a representative of Jones, representatives of each protesting carrier, eleven public witnesses appearing on behalf of Jones, and nine public witnesses appearing on behalf of the protesting carriers.

LAW

I. ARE THE FIRST TWO RULINGS OF THE PSC RES JUDICATA, AND IF SO, IS THE RES JUDICATA BAR LIFTED BY A MATERIAL CHANGE IN CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DENIAL OF JONES' FIRST TWO PETITIONS?
If the PSC's denial of Jones' first two claims are res judicata, then Jones was *780 entitled to proceed on its third application only upon demonstrating that a material change in circumstances occurred between the time of the second denial and the filing of the third petition. See Bowe v. Bowe, 557 So.2d 793, 794 (Miss. 1990) (material change in circumstances removes res judicata bar); Clark v. Myrick, 523 So.2d 79, 84 (Miss. 1988) (same); City of Jackson v. Shell Oil Co., 347 So.2d 340, 341 (Miss. 1977) (same). If no res judicata bar applied, then Jones was entitled to proceed in its third petition as if the previous proceedings had not occurred.
Since res judicata is an affirmative defense, it is waived if not timely pled. State ex rel. Moore v. Molpus, 578 So.2d 624, 641 (Miss. 1991); Wholey v. CalMaine Foods, Inc., 530 So.2d 136, 138 (Miss. 1988); see MRCP Rule 8(c). The protesting carriers never raised the issue at the hearing below, so they are estopped from asserting it on appeal. In reversing the PSC's grant of a certificate to Jones, the circuit court stated:
This court recognizes that any one small change coupled with other factors that existed at the time of the prior denial and continuing to the present would be sufficient to sustain the Commission's order. The court is simply not able to find any substantial evidence of any material change.
Since the protesting carriers failed to raised the res judicata defense at the PSC hearing, Jones was not obligated to demonstrate a material change in circumstance. The circuit court erred, therefore, in reversing on these grounds.
Owing to the protesting carriers' waiver, there is no need for us to determine whether a material change in circumstances occurred subsequent to the prior Jones proceedings. By the same token, we need not address the questions of whether the doctrine of res judicata applies generally to hearings before the PSC, and, if so, whether the doctrine could have applied in this particular case.

II. DOES THE RECORD CONTAIN SUBSTANTIAL EVIDENCE THAT A GRANT OF AUTHORITY TO JONES IS BOTH "CONVENIENT" AND "NECESSARY"?
The protesting carriers concede that granting a certificate to Jones might inure to the public convenience, and the record justifies their concession.[1] They insist, however, that Jones has not shown that such a grant is justified by public necessity. In Dixie Greyhound Lines v. Mississippi Public Service Commission, 190 Miss. 704, 200 So. 579 (1941), this Court stated:
The term public convenience and necessity used throughout the statute here under consideration, is not to be confused with the idea of public convenience or necessity. It may be convenient to have a bus going in each direction every hour of the day from the various stations along a route, but the public necessity does not so require.
Id., 200 So. at 585.
Miss. Code Ann. § 77-7-45 sheds light on how the PSC should go about determining whether an application for authority is justified by the public convenience and necessity. The statute provides:
In determining whether the Certificate shall be granted, the Commission shall, among other things, give due consideration to the present transportation facilities over the proposed route of the applicant, *781 the volume of traffic over such route, the financial condition of the applicant, and the condition of the highway over the proposed route, or routes.
Contrary to the protesting carriers' assertions, the record does contain information of the type indicated in § 77-7-45. In fact, a large part of it was supplied by the protesting carriers themselves. The protestant's Exhibit 86, for example, consists of a list of all intrastate carriers doing business in Mississippi. Exhibit 87 lists the three carriers whose authority is synonymous with that sought by Jones. Exhibit 75f provides a detailed statistical breakdown of traffic volume by carrier for the period 1981-85. Jones' Exhibit I details the applicant's financial status. The record does not contain evidence concerning "the condition of the highway over the proposed route, or routes," but Jones does not seek authority to operate over a particular route: The Jones application proposes operation "[b]etween all points and places over irregular routes within the State."
The legislature's grant of permission to consider "other things" comes into play as well. The PSC may have considered, in connection with this issue, the evidence put on by Jones concerning the financial condition of current and past intrastate carriers.
John Karlberg, President and Chief Executive Officer of Jones Truck Lines, testified that
the challenge that we have as an industry with insurance and, while on a national basis we have not received any rate increases predicated on the escalating insurance, we have had a lot of feedback from our customers being concerned about financial stability in general. And not only have we seen the demise of some carriers  at least one carrier here in Mississippi  but on a national basis, we have seen the demise of many carriers. In several instances, in spite of the Commission  either the ICC or the Mississippi Commission  granting increases, these carriers still failed to a large degree due to the escalation of their insurance costs. One of the things that we intend to demonstrate in our application today is that Jones Truck Lines has the financial stability to adjust to these large premium increases which we have also experienced.
The "Statement of Jones Truck Lines, Inc.," introduced as Exhibit I and incorporated as part of Karlberg's testimony, sets out in detail the company's financial strength. The financial strength of the protesting carriers varied. The representative of Shippers Express testified that his company was financially stable and planned to be debt free by the end of 1986. Merchants refrained from disclosing its own financial data but acknowledged the closing of three out of sixteen Mississippi terminals over the previous two years. Tom Lampkin of Barnes Truck Line painted a rather desperate financial picture of his company. He testified that Barnes "had to drop out of the LTL" (less-than-truckload) business in 1982. He added: "We went in the truck load business because we feel like that we don't want to go down. We're going to fight until the end to stay."[2] Haynes, which had taken over the operations of Rebel nine months before, testified that it was not operating at a profit.[3] Howard Cash, a former employee of the now-defunct Highway Express, testified that the tremendous increase in insurance costs was the primary factor in the demise of Highway Express.
In light of the financial difficulties of some intrastate carriers and the demise of Highway Express, the Commissioners could have concluded that the addition of a financially stable carrier such as Jones was required as a matter of public necessity. Public witness Charles Jones, distribution manager for Dennison National Company, testified that his company's projected growth would increase the company's need for "a carrier that not only is aggressive *782 but a carrier that is very profitable, a carrier I know is going to be in business."
The Commission might also have determined that increasing reliance on computer technology required the addition of a company which is able to provide advanced information services. Jones holds itself out as able and willing to meet the alleged growing demand for computerization in the industry,[4] while none of the other carriers presently have computer interfacing capability.[5]
The record is thus replete with evidence from which the PSC could have concluded that granting Jones the authority it requested was justified as a matter of public convenience and necessity. It is true that the protesting carriers offered voluminous evidence to the contrary, but as this Court pointed out in State ex rel. Pittman v. Mississippi Public Service Commission, 481 So.2d 302, 305 (Miss. 1985):
The Commission had before it the whole ball of wax. It was clearly the Commission's prerogative on [a] disputed issue to adopt whichever ... view it chose to give credence to. The Commission, with its expertise, is the trier of facts and within this province it has the right to determine the weight of the evidence, the reliability of estimates and the credibility of the witnesses.
So long as substantial evidence exists, an agency's fact finding must be allowed to stand "even though there might be room for disagreement on that issue." Babcock & Wilcox v. Roby, 246 Miss. 160, 165, 150 So.2d 129, 130 (1963); accord Magee Truck Lines, Inc. v. Bond, 190 Miss. 428, 434, 200 So. 586 (1941) ("The [circuit] court is not authorized to substitute its judgment for that of the Commission where there is substantial (that is, more than a scintilla of) evidence to support the finding"); see also Eidt v. City of Natchez, 421 So.2d 1225, 1231 (Miss. 1982); Mississippi State Tax Comm'n v. Mississippi-Alabama State Fair, 222 So.2d 664, 666 (1969), cert. denied, 396 U.S. 940, 90 S.Ct. 374, 24 L.Ed.2d 241 (1969).
The evidence favoring the granting of Jones' petition is clearly "substantial." The circuit court may have disagreed with the PSC's conclusions, but it had no authority, in its limited appellate role, to reevaluate the relative weights of the parties' proof. The court below erred in finding that the PSC's Order was unsupported by substantial evidence.

III. IF THE RECORD LACKS SUBSTANTIAL EVIDENCE TO SUPPORT JONES' PETITION, MAY THE PSC BASE ITS RULING ON EXTRINSIC FACTS?
Jones contends that the circuit court would have erred in reversing the PSC's Order even if the record did not contain substantial evidence. According to Jones, the PSC should be allowed to base its decision on any and all information, regardless of its source. Jones cites Miss. Code Ann. § 77-7-45 in support of its position. Section 77-7-45 provides that "[i]n determining whether the Certificate shall be granted, the Commission shall, among other *783 things, give due consideration to the present transportation facilities... ." (emphasis added). The "among other things" clause, Jones maintains, entitles the PSC to consider evidence presented at the previous two Jones hearings along with matters personally known to the Commissioners by virtue of their acquaintance with the carrier industry.
We choose not to confront this issue directly, having held that the PSC's Order is undergirded by substantial evidence appearing in the record. The protesting carriers, however, have launched a counterattack based on this assignment of error which merits discussion. By considering facts outside the record, the protesting carriers contend, the PSC violated their constitutional and statutory rights. They cite Mississippi-Alabama State Fair, 222 So.2d at 665, which holds that an administrative order may be reversed if it "violate[s] some statutory or constitutional right of the complaining party." Id. at 665.
If the PSC did in fact base its order on extrinsic evidence, then the protesting carriers might have a point. However, there is nothing in the record to indicate that the PSC based its findings on anything other than evidence offered at the hearing below. Neither the hearing transcript nor the Commission's Order makes any reference to matters outside the record. The protesting carriers cannot shore up circuit court's reversal by imputing speculative error to the Commission's decision. According to Shelton v. Kindred, 279 So.2d 642, 644 (Miss. 1973):
[The appellate court] may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record. It must be presumed that the rulings of trial court were correct, and such presumption will prevail unless the actual record supports the contrary view.
In the absence of some indication in the record that the PSC based its findings on extrinsic facts, we must presume that the Order is supported by the substantial evidence offered at the hearing below.

CONCLUSION
The protesting carriers did not assert the doctrine of res judicata at the hearing on Jones' third application for a Certificate of Public Convenience and Necessity. Accordingly, Jones did not need to prove that a material change in circumstances had occurred between the time of the Jones II hearing and the time of the instant hearing. The circuit court thus erred in reversing on grounds that Jones had failed to introduce substantial evidence of a material change in circumstances. The circuit court further erred by reversing on grounds that the PSC's Order was not justified by public convenience and necessity: The Commission heard substantial evidence on which it could reasonably base its findings.
The protesting carriers assert that the circuit court's reversal was proper since the PSC may have considered facts outside the record in arriving at its decision. We refuse to affirm the circuit court on those grounds, however, for there is no indication in the record that the PSC considered extrinsic evidence.
REVERSED AND REMANDED FOR REINSTATEMENT OF THE CERTIFICATE AWARDED TO JONES TRUCK LINES BY THE MISSISSIPPI PUBLIC SERVICE COMMISSION.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and BANKS, JJ., concur.
PITTMAN, J., not participating.
NOTES
[1] Gerald Hart from Georgia Pacific testified that having access to Jones' electronic data interchange would enable his company to deliver its products more expeditiously. James Job, the public witness from Northern Electric Company, testified that using Jones for intrastate traffic would simplify shipping procedures for his company by enabling it to use one line for both interstate and intrastate shipping. Charles Johnson, the public witness from Dennison National Company, likewise testified that granting Jones authority to engage in intrastate shipping would allow his company to ship goods more conveniently and economically. Dennison National already uses Jones for interstate shipments, and being able to use one carrier for both interstate and intrastate shipments would prevent congestion and confusion at his company's docking facilities. In this same vein, Frederick Jones of Columbus Marble Works testified that using Jones for both interstate and intrastate shipping would lessen the number of trucks at its one-door dock and would eliminate the need to segregate Mississippi deliveries.
[2] Barnes discontinued its intrastate business at some point subsequent to the Jones III hearing.
[3] The carrier business operated by Rebel and then Haynes changed hands again after the Jones III hearing and became AAA Cooper Transportation.
[4] Jones averred the following in its written statement:

A central system of dispatch is maintained at the home office in Springdale, Arkansas. Wide area telephone system (WATS) and computers are employed for dispatching equipment and schedules, coordination of service, and for tracing of shipments, as well as for general communications between terminals... . The majority of today's customers demand state-of-the-art computer information from carriers. Our major terminals are "on line" and customers can access our data base either by telephone or CRT. We are expanding this program to all of our terminals and have budgeted over $2.5 million in 1986 and $3.4 million in 1987 for information services.
[5] James E. Roberts, secretary-treasurer of Merchants Truck Line, testified that his company's computer could be made to interface with customers' computers with "some modification" along with the addition of modems and other equipment. Larry Kerr, president of Shippers Express, testified that his company had a computer system which, with the installation of additional equipment, could interface with customers' computers. On cross-examination, however, it was brought out that the Shippers Express computer system was connected only to the company's Jackson terminal and was used only for billing and rating purposes.