621 So.2d 1211 (1993)
MISSISSIPPI COMMISSION ON ENVIRONMENTAL QUALITY
v.
CHICKASAW COUNTY BOARD OF SUPERVISORS.
No. 91-CA-711.
Supreme Court of Mississippi.
July 15, 1993.
*1212 Jayne L. Buttross, Jackson, for appellant.
John P. Fox, Houston, for appellee.
Before PRATHER, P.J., and SULLIVAN and ROBERTS, JJ.
SULLIVAN, Justice, for the Court.
In June 1989, the Mississippi Commission on Environmental Quality (Commission) issued an Order requiring the Chickasaw County Board of Supervisors (Board) to bring its sanitary landfill into compliance with the closure requirements of the Mississippi Nonhazardous Waste Regulations. The Order included a penalty of four thousand dollars ($4,000.00). The Board appealed to the Chancery Court of the First Judicial District of Chickasaw County. The chancellor affirmed the Order, but modified it in one respect: he ordered that the penalty be deposited into a separate fund by the Board, to be spent on complying with the Commission's Order, rather than paid into the Pollution Emergency Fund created by Miss. Code Ann. § 49-17-68 (1972 & Supp. 1992). The chancellor further ordered that any funds remaining after closure be returned to the general fund of Chickasaw County. Finding that the chancellor exceeded the limited scope of review for agency decisions, we reverse, reinstate the Commission's Order, and remand the matter to the Commission for enforcement.

FACTS AND PROCEDURAL HISTORY
On September 1, 1981, the Mississippi Natural Resources Permit Board (now the Mississippi Environmental Quality Permit Board)[1] issued permit number SW00901A0098 to the Chickasaw County Board of Supervisors, allowing the Board to operate a landfill for the disposal of household garbage and other solid waste. The landfill was located in Section 2, Township 13 South, Range 3 East, Chickasaw County, inside a United States National Forest.
On November 2, 1987, the Board informed the Office of Pollution Control that "the county has gotten out of the landfill business and is presently attempting to close the landfill ... pursuant to the closure procedure of the regulations."
A landfill no longer in use must be sealed or closed in accordance with Mississippi Nonhazardous Waste Management Regulation No. PC/S-1, Section D, "Solid Waste Landfill."[2] Section D-19 of the regulations reads in part:
A final cover of at least two feet of earthen material, compacted in layers of no more than 12 inches, shall be placed over the entire surface of each completed portion of the fill within 30 days after completion unless inclement weather prevents the application of dry cover material. The top six inches of final cover shall consist of a suitable topsoil which will sustain the growth of vegetation except where otherwise authorized by the Bureau.
The final cover gradient on top of the fill shall not normally exceed four percent ... to prevent the ponding of water on *1213 the landfill surface and minimize infiltration of water into the landfill.
Erosion on intermediate or final cover shall be repaired by restoring the cover material and grading and compacting it as necessary to prevent ponding of water.
Section D-20 provides that prior to completion of disposal operations or abandonment of a site, the site operator must notify the Bureau and provide a closure and post-closure plan and schedule. The purpose of the regulations is "to minimize the infiltration of rainwater precipitation into garbage which would create contaminated leachate and contaminated runoff that might leach laterally or horizontally down into groundwater aquifers or... laterally into surrounding woodlands or creeks in the area."
The Board intended to contract with the Knox Landfill, a privately operated facility in Chickasaw County, for the disposal of solid waste. However, Knox lacked equipment and its site was unprepared, so it was not able to accept waste at that time. Garbage was accepted at the county landfill until late January or February of 1988.
The Office of Pollution Control inspected the county landfill on June 8, 1988, and found that the Board had failed to comply with the closure requirements of the Mississippi Nonhazardous Waste Regulations. In particular, the inspection revealed inadequate cover, erosion, and "promiscuous dumping and burning." The Office informed the Board by letter of its findings of noncompliance and requested that the conditions be corrected.
Another inspection on July 26, 1988, found "very little improvement over the last inspection" and "burning with a great deal of smoke being spread over the area to the east of the landfill." On August 8, 1988, the Office informed the Board by letter that it intended to initiate enforcement action. On September 13, 1988, the Mississippi Department of Natural Resources issued Administrative Order No. 1458-88, finding that the Board had failed to comply with Sections D-19 and D-20 of the Mississippi Nonhazardous Waste Regulations and ordering the Board to comply with cover and closure requirements by November 15, 1988.
On February 9, 1989, pursuant to Miss. Code Ann. § 49-17-31 (1972), the Mississippi Commission on Natural Resources served a written complaint on the Board, charging a failure to comply with the Administrative Order, and scheduling a hearing before the Commission concerning the complaint.
An inspection held one week before the hearing found numerous continuing violations, including erosion, piles of garbage, lack of ground cover or topsoil, leachate, ponding, refuse in a drainage ditch, and the lack of a gate to keep the public out.[3]
At the hearing held April 26, 1989, the Commission heard testimony of Mark Williams, an environmental engineer with the Nonhazardous Waste department of the Bureau of Pollution Control. He described the final cover and closure requirements for landfills set out in Sections D-19 and D-20 of the Nonhazardous Waste Regulations, the ongoing violations of these rules at the Chickasaw landfill, and the correspondence between the Board and the Office of Pollution Control concerning the Office's investigations. Nancy Moore, an environmental technician with the Bureau who had made two inspections of the Chickasaw landfill also testified. A number of photos of the landfill taken in October 1987 were introduced. The Board sought to show that there had been considerable rain during the period of January through the spring, and that this had prevented the necessary work at the landfill. The Board also stated its intention to comply with the Order, through the testimony of John Moore, the president of the Board, and Edward Springer, county engineer.
*1214 On June 15, 1989, the Commission issued Administrative Order No. 1578-89, finding a violation of Order No. 1453-88, requiring compliance with the law within sixty days and assessing a four thousand dollar ($4,000) penalty against the Board.[4] Two thousand dollars ($2,000) were to be paid within 30 days, the balance to be held in abeyance pending compliance with the order.
The Board appealed on June 21, 1989, to the Chancery Court of the First Judicial District of Chickasaw County under Miss. Code Ann. § 49-17-41 (1972). The appeal was heard by Hon. W.W. Brand on March 6, 1991. The chancellor, finding that "during the period of attempting closure ... this area experienced unusual rainfall," issued a bench opinion which reads in part:
Ordinarily, trial courts sitting as appellate courts have limited review, and the standards of review are substantial evidence, arbitrary or capricious, beyond the power of the agency to make, or a violation of appellant's due process rights. The leniency of the Agency and the recognition of the difficulty encountered by the Board, in this Court's opinion, removes this review from the four established standards as was contemplated by the Legislature in that Section 17-17-45 makes reference to Section 49-17-41, and quoting in part, "The Chancery Court shall review all questions of law and of fact," which, in this Court's opinion, enlarges the Court's scope of review. The threshold purpose of all statutes and regulations pertaining to solid waste disposal and pollutions of water and other conservation and ecological statutes is to protect the environment ... (t)here is no proof nor argument that the ... Board ... refused to comply with the Agency requirement. The Agency recognized the difficulties and exhibited leniency in extending deadlines. Whether or not subject landfill is now in compliance is not an issue before this Court. To exact a monetary penalty would only penalize the citizens of this County and increase their cost of complying with the Agency requirement ... there is sufficient fault to be shared by all concerned... .
In a judgment dated June 24, 1991, the chancellor affirmed the Commission's Order No. 1578-89, but modified it in one respect: he ordered that the $4,000 penalty, instead of being paid to the Pollution Emergency Fund under Miss. Code Ann. § 49-17-68 (Supp. 1992), be paid by the Board into a separate fund to be held by the Board for the express and immediate purpose of complying with Section D of the Nonhazardous Waste Management Regulations. He further ordered that any funds remaining after compliance would be returned to the general fund of Chickasaw County.
The Commission filed its appeal of this judgment on July 16, 1991.

A
Miss. Code Ann. § 17-17-45 (Supp. 1992), of the Solid Wastes Disposal Law of 1974 provides for appellate review of the Commission on Environmental Quality's decisions:
In addition to any other remedies that might now be available, any person or interested party aggrieved by an order of the commission or of the permit board of the bureau of pollution control shall have the right to perfect an appeal to the appropriate chancery court in the manner set forth in sections 49-17-41 and 49-17-29.
Miss. Code Ann. § 49-17-41 (1972), concerning appeals to the chancery court of decisions by the Commission, provides in part:
Appeals shall be considered only upon the record as made before the commission... . The chancery court shall review all questions of law and fact. If no prejudicial error be found, the matter shall be affirmed and remanded to the commission for enforcement. If prejudicial *1215 error be found, the same shall be reversed and the chancery court shall remand the matter to the commission for appropriate action as may be indicated or necessary under the circumstances.
The scope of review of the findings and actions of an administrative agency is well established. The reviewing court will entertain the appeal to determine whether or not the order of the administrative agency 1) was unsupported by substantial evidence, 2) was arbitrary or capricious, 3) was beyond the power of the administrative agency to make, or 4) violated some statutory or constitutional right of the complaining party. These are the only grounds for overturning an agency action; otherwise, the agency's determination must remain undisturbed. Southeast Miss. Legal Serv. v. Miss. Power, 605 So.2d 796, 798 (Miss. 1992); Dept. of Health v. S.W. Miss. Med. Ctr., 580 So.2d 1238, 1239 (Miss. 1991); Melody Manor Convalescent Center v. Mississippi State Dept. of Health, 546 So.2d 972, 974 (Miss. 1989); Eidt v. City of Natchez, 421 So.2d 1225, 1231 (Miss. 1982).
That the chancellor in this case was familiar with these standards is clear from this excerpt of his opinion:
Ordinarily, trial courts sitting as appellate courts have limited review, and the standards of review are substantial evidence, arbitrary or capricious, beyond the power of the agency to make, or a violation of appellant's due process rights.
However, it is also clear that the chancellor believed the circumstances of this particular case merited an expansion of the established standard of review. The opinion continues:
The leniency of the Agency and the recognition of the difficulty encountered by the Board, in this Court's opinion, removes this review from the four established standards as was contemplated by the Legislature in that Section 17-17-45 makes reference to section 49-17-41, and quoting in part: "The Chancery Court shall review all questions of law and of fact," which, in this Court's opinion, enlarges the Court's scope of review. (Emphasis added).
In addition, the Board contends that the following underlined language in Miss. Code Ann. § 49-17-41 (1972), enlarges the Court's scope of review, "If prejudicial error be found, the same shall be reversed and the Chancery Court shall remand the matter to the commission for appropriate action as may be indicated or necessary under the circumstances."[5]
Both arguments for expanding the scope of judicial review are unsupported. This Court has continued to require that circuit and chancery courts hearing appeals of agency actions adhere to the four part standard above. See, e.g., Southeast Miss. Legal Serv. v. Miss. Power, 605 So.2d at 798; Mississippi Public Service Commission v. Columbus & Greenville Ry. Co., 573 So.2d 1343, 1346 (Miss. 1990). Where a circuit or chancery court exceeds its authority and overturns an agency action, this Court will reverse and reinstate the agency's order. Mississippi Public Service Commission v. Merchant's Truck Line, Inc., 598 So.2d 778, 782 (Miss. 1992); Mississippi State Department of Health v. Southwest Mississippi Regional Medical Center, 580 So.2d 1238, 1242 (Miss. 1991); United Cement Company v. Safe Air for the Environment, 558 So.2d 840, 842 (Miss. 1990).[6]
*1216 These and numerous other cases establish that there is a rebuttable presumption in favor of an administrative agency's actions; the burden of proof is upon the challenging party. United Cement Company v. Safe Air for the Environment, 558 So.2d 840, 842 (Miss. 1990); Mississippi Hosp. Ass'n, Inc. v. Heckler, 701 F.2d 511, 516 (5th Cir.1983); Alcorn County Board of Education v. Parents and Custodians of Students at Rienzi School Attendance Center, 251 Miss. 195, 168 So.2d 814, 818 (1964). Review by the appellate court is limited to the record and to the agency's findings. Mississippi Employment Sec. Commission v. PDN, Inc., 586 So.2d 838, 840 (Miss. 1991); Barnett v. Miss Employment Sec. Commission, 583 So.2d 193, 195 (Miss. 1991); Ray v. Bivens, 562 So.2d 119, 121 (Miss. 1990). The appellate court may not reweigh the facts, nor may it substitute its judgment for that of the agency. Mississippi Public Service Commission v. Merchants Truck Line, Inc., 598 So.2d 778, 782 (Miss. 1992); Mississippi Public Service Comm'n. v. Columbus & Greenville Ry. Co., 573 So.2d 1343, 1346 (Miss. 1990); U.S. v. Garner, 767 F.2d 104, 116 (5th Cir.1985); Cook v. Heckler, 750 F.2d 391, 392 (5th Cir.1985). For example, in Mississippi Public Service Commission v. Merchants Truck Line, Inc., the Public Service Commission had granted a certificate for interstate shipping. The circuit court reversed, on the grounds that the PSC's ruling was not supported by substantial evidence. This Court reversed, stating:
So long as substantial evidence exists, an agency's fact finding must be allowed to stand "even though there might be room for disagreement on that issue." ("The [circuit] court is not authorized to substitute its judgment for that of the Commission where there is substantial ... evidence to support the finding.")
The evidence favoring the granting of Jones' petition is clearly "substantial." The circuit court may have disagreed with the PSC's conclusions, but it had no authority, in its limited appellate role, to reevaluate the relative weights of the parties' proof.
Mississippi Public Service Commission v. Merchants Truck Line, Inc., 598 So.2d at 782 (citations omitted).
When this Court reviews a decision by a chancery or circuit court concerning an agency action, it applies the same standard of review those courts are bound to follow. Mississippi Employment Sec. Com'n. v. Gaines, 580 So.2d 1230, 1233 (Miss. 1991); Mississippi Employment Sec. Commission v. Pulphus, 538 So.2d 770, 772 (Miss. 1989).
Applying the correct standard of review to the Commission's Order, there is nothing to suggest that the Order should not have been affirmed. The record shows that inspectors of the landfill found continuing violations of Sections D-19 and D-20 of the Nonhazardous Waste Management Regulations. At the Commission hearing, the testimony of several inspectors and Department officers about the condition of the landfill was clear and uncontested  sufficient evidence upon which the Commission could have based its findings. The Board did not point to any fact or occurrence suggesting that the Commission's actions were arbitrary  for example, that other sites operating in violation of the *1217 regulations were fined much less, or not at all. Under § 17-17-29(1) (Supp. 1992), the Commission is authorized to impose fines up to $25,000 per day for violations of the Solid Wastes Disposal Law. The Commission's "Civil Penalty Guidance" sheet shows $4,000 as the suggested fine for a medium sized violator committing a medium sized violation. It also provides that "(t)he... penalties may be adjusted either up or down based upon such considerations as willfulness of the act and/or sincerity of efforts taken to prevent or correct the violation."[7] Under these standards, the fine of $4,000 imposed on the Board was neither arbitrary nor capricious. Finally, the Commission provided the hearing to which the Board was entitled under Miss. Code Ann. §§ 49-17-31 and 49-17-33 (1972). This hearing, in combination with the record, shows that the Board was afforded due process.
In short, because the Commission acted within its statutory mandate in investigating and fining the Board of Supervisors, acting neither arbitrarily nor capriciously, providing the Board with due process, the Commission's Order should have been affirmed.

B
The kink in this case is that the chancellor affirmed the findings of the Commission and purported to "modify" the Commission's order by directing that the $4,000 be placed by the Board in a special fund to be spent curing the violations, instead of being deposited in the State's Pollution Emergency Fund as provided by law. The Board contends that the Chancellor may make such "modifications." However, by directing that $4,000 be spent by Chickasaw County to clean up the mess, instead of affirming the Commission's ruling that the County must both clean up the mess, and pay a penalty of $4,000, the chancellor effectively eliminated the penalty. Limited by the correct standard of review, the chancellor had no authority to disturb any part of the order, including the penalty, and replace it with one he felt was more suited to the circumstances. The chancellor's action amounted to a substitution of his own judgment for that of the agency, which this Court has expressly and repeatedly forbidden.
Even an examination of the penalty separately from the findings, as the Board contends is proper, does not suggest a different outcome. This Court has not addressed the precise issue presented by the chancellor's ruling  whether a penalty may be modified while the Commission's findings are left undisturbed. However, logic suggests that a penalty would be assessed under the same standard of review as is employed when reviewing other agency findings and actions.
Harris v. Mississippi Real Estate Commission, 500 So.2d 958 (Miss. 1986), was our closest brush with this question. In Harris, a real estate broker appealed the revocation of her license by the Real Estate Commission. She contended that the evidence weighed by the Commission neither supported a finding of guilt nor the imposition of such severe punishment. This Court set out the familiar standard of review, held that the Commission's findings had been based on substantial evidence, and had been neither arbitrary or capricious. We stated:
We take Ms. Harris' complaint against the severity of the sanction as an invitation for this Court to separately evaluate the findings and the punishment. We decline the invitation. We note that other jurisdictions might find that an agency abused its discretion in imposing a penalty *1218 even where substantial evidence supports a finding of a violation.
However, our traditional standard of review, whether or not it arguably allows such a determination, does not obligate us to separately second guess an administrative agency's imposition of sanction. We take this position in recognition of the unique position administrative agencies hold.
Harris, 500 So.2d at 963 (citations omitted). This suggests that a reviewing court may look at findings and punishment separately, but does not suggest that any different standard of review should be applied in analyzing the penalty.
Case law from sister states has established that the choice of penalty is within the discretion of an administrative agency; an agency's penalty, like its findings, may be overturned only if arbitrary or capricious. See, e.g. Matter of McGowan, 533 So.2d 999 (La. App. 1988), cert. denied, 493 U.S. 822, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989) ($56,000 fine by Department of Environmental Quality set aside as abuse of discretion; ordinarily a penalty will not be disturbed unless arbitrary or capricious); Lee v. Division of Fla. Land Sales and Condominiums, 474 So.2d 282 (Fla.App. 1985) (agency's choice of penalty, if within statutory limits, not within district court's power to review). See also Brewer v. Insurance Commissioner and Treasurer, 392 So.2d 593 (Fla.App. 1981) (where agency findings are supported by competent, substantial evidence and penalty is within range of statute, penalty imposed may not be reviewed on appeal).
Federal case law shows similar deference to an agency's determination of penalty. In Wayne Cusimano, Inc. v. Block, 692 F.2d 1025 (5th Cir.1982), a produce dealer sought judicial review of the Department of Agriculture's revocation of his license. The court found that substantial evidence supported the administrative determination that his nonpayment of amounts due was "wilful" and "flagrant" so as to justify the revocation. It also stated
The administrator's selection of the appropriate sanction to effectuate the statutory policy is one peculiarly within the administrative competence, and the administrative choice of sanction is not to be overturned on judicial review unless found to be either unwarranted in law or else without justification in fact
Wayne Cusimano, 692 F.2d at 1030, citing Butz v. Glover Livestock Commission Company, Inc., 411 U.S. 182, 185-86, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973). Similarly, in Castillo v. Army & Airforce Exchange Service, 849 F.2d 199 (5th Cir.1988), the Court found that there was sufficient evidence to support the agency's determination of an employee's misconduct, stating that "[t]he choice of penalty ... is left to the agency's sound discretion" and that the agency's choice would not be disturbed unless the severity of the action appears totally unwarranted in light of the relevant factors. Castillo, 849 F.2d at 204.
In short, even were this Court to examine the penalty imposed by the Commission separately from the findings of Order No. 1578-89, the outcome would be no different.

CONCLUSION
By his own admission, the chancellor expanded his scope of review in considering the Board's appeal of the Commission's Order. Such expansion was in error. Applying the correct standard of review for an agency action, we find that the Commission's Order, requiring the Board to bring its landfill into compliance with the closure requirements of the Mississippi Nonhazardous Waste Regulations and imposing a $4,000 fine, was supported by sufficient evidence, was neither arbitrary nor capricious, nor in violation of the Board's due process rights. Pursuant to Miss. Code Ann. § 49-17-41 (1972), the chancellor's Order modifying the penalty is reversed, the Commission on Environmental Quality's Order is reinstated, and this cause is remanded to the Commission for enforcement.
*1219 REVERSED; THE COMMISSION ON ENVIRONMENTAL QUALITY'S ORDER IS REINSTATED; THIS CAUSE IS REMANDED TO THE COMMISSION FOR ENFORCEMENT.
PRATHER, P.J., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
HAWKINS, C.J., not participating.
NOTES
[1] The Mississippi Environmental Quality Permit Board (formerly the Mississippi Natural Resources Permit Board and the Mississippi Pollution Control Permit Board), composed of designees from various state agencies responsible for managing environmental resources, is authorized to issue, modify, revoke and deny permits for the disposal of solid wastes. Miss. Code Ann. Section 49-17-28 (Supp. 1992). The Mississippi Commission on Environmental Quality (formerly the Commission on Natural Resources) promulgates and enforces rules and regulations "as the Commission may deem necessary to prevent, control and abate existing or potential pollution ..." Miss. Code Ann. Section 49-2-9 (1972). The Commission is the policy making body and enforcement tribunal for the Department of Environmental Quality (formerly the Department of Natural Resources), the agency charged with "conserving, managing, developing, and protecting the natural resources of the state." The Office of Pollution Control (formerly the Bureau of Pollution Control) is one of the DEQ's four subdivisions.
[2] These regulations were promulgated pursuant to § 17-17-27 of the Solid Waste Disposal Law of 1974, which authorizes the DEQ to adopt "such rules and regulations as may be needed to specify methodology and procedures to meet the requirements of this chapter... ."
[3] Nancy Moore, who inspected the landfill on April 19, 1989, reported that she found "numerous county employees" there, including one who told her that the county had moved equipment to the site the day before. This employee said that he and the other workers had "not really been told what to do."
[4] Mississippi Code Annotated, Section 17-17-29(6) (Supp. 1992), provides that all fines, penalties and other sums recovered under the statute are to be deposited in the Pollution Emergency Fund established in Miss. Code Ann. § 49-17-68 (1972 & Supp. 1992).
[5] The Board's reliance on Illinois Cent. R. Co. v. Mississippi Public Service Commission, 220 Miss. 439, 71 So.2d 176 (1954), for the proposition that a reviewing court has the power to modify the findings and actions of an agency is misplaced. In that case, a statute [Miss. Code Ann. § 7699 (1942)] specifically provided that a reviewing court could "affirm, reverse or modify (an order of the Commission) ... and enter therein such order or judgment as may be right and just." No such statute exists pertaining to appeal of the Commission on Environmental Quality's orders, leaving them within the fold of administrative decisions which must be left undisturbed where the agency's actions have been neither arbitrary nor capricious.
[6] That Miss. Code Ann. § 49-17-41 (1972), does not permit a greater scope of review is supported by Walker Mfg. v. Cantrell, 577 So.2d 1243 (Miss. 1991). In this case, a circuit judge had reversed a Workers' Compensation Commission's findings and award to an injured worker. This Court reversed, citing the statute providing for review of Workers' Compensation cases. Miss. Code Ann. § 71-3-51 (1972) provides:

The circuit court shall review all questions of law and of fact. If no prejudicial error be found, the matter shall be affirmed and remanded to the commission for enforcement. If prejudicial error be found, the same shall enter such judgment or award as the commission should have entered.
The Court stated:
(t)his is nothing other than a workers' compensation variant on accepted limitations upon the scope of judicial review of administrative agency decisions, i.e., that the courts may interfere only where the agency action is seen arbitrary or capricious.
Walker Mfg., 577 So.2d at 1247. The statute cited above is almost identical to § 49-17-41 (1972), which provides for review of Commission orders. Logic suggests that § 49-17-41 should be interpreted as providing for the same deferential standard of review the Court identified in its interpretation of § 71-3-51.
[7] Section 17-17-29(7) (Supp. 1992), directs the commission to consider the following factors in determining the amount of penalty imposed on violators of the Solid Wastes Disposal Law:

(a) The willfulness of the violation;
(b) Any damage to air, water, land or other natural resources of the state or their uses;
(c) Costs of restoration and abatement;
(d) Economic benefit as a result of noncompliance;
(e) The seriousness of the violation, including any harm to the environment and any hazard to the health, safety and welfare of the public; and
(f) Past performance history.