ISHEE, J.,
dissenting:
¶ 15. I must respectfully dissent from the majority. Like the Smith County School Board in its original decision, the majority fails to consider the totality of the circumstances surrounding Laura Shon-telle Barnes’s alleged refusal to submit to a drug test. Barnes changed her mind about taking the drug test several times that day. However, she ultimately agreed to take the test, but the Taylorsville Elementary School Principal, Yvonne Dees, refused to allow her to take the drug test. By singling out Barnes and making the decision to terminate her based only on her initial refusal to take the test, the majority is improperly cherry-picking a single event, while ignoring Barnes’s ultimate decision to take the test voluntarily.
¶ 16. It is undisputed that Barnes’s employment was terminated solely on the basis that she refused to take a drug test. Therefore, our limited inquiry is whether substantial evidence exists to support the Board’s assertions that Barnes did, in fact, refuse to take the test. Substantial evidence is that which is more than a “mere scintilla” of evidence, or “evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred.” Miss. Dep’t of Human Servs. v. McNeel, 869 So.2d *83 1013, 1018 (¶ 19) (Miss.2004) (citation omitted). Where there is substantial evidence, “an agency’s fact finding must be allowed to stand ‘even though there might be room for disagreement on that issue.’ ” Miss. Pub. Serv. Comm’n v. Merchants Truck Line, Inc., 598 So.2d 778, 782 (Miss.1992) (quoting Babcock & Wilcox v. Roby, 246 Miss. 160, 165, 150 So.2d 129, 130 (1963)).
¶ 17. The majority notes that Barnes did not proffer the results of her drug test or a doctor’s prescription to substantiate her claims during the termination hearing. However, based on the Smith County School District’s charge that she refused to take the test, any evidence of her failing or passing the test or of having a justifiable excuse for the medication was not necessary to prove her case. The record shows that Barnes demonstrated her willingness to comply with the District’s drug policy within a reasonable amount of time from her initial refusal. Yet the school’s principal rejected her request. Notwithstanding that rejection, Barnes voluntarily submitted to a drug test that same afternoon after being counseled by the assistant superintendent, Priscilla Magee, to take one on her own.
¶ 18. The District’s policy and the applicable statutes are void of any language mandating a time frame in which the employee must be tested. Nonetheless, common sense prescribes that a drug test should be administered within a reasonable amount of time after an alleged violation of the rules has been reported in order to obtain an accurate result of any drugs in an employee’s system. The policy also does not state that an employee is prohibited from changing his or her mind within a reasonable amount of time after a refusal to submit to a drug test. The facts reveal that Barnes initially agreed to take the drug test, refused, and then ultimately agreed again. All of this occurred during regular work hours on the same day.
¶ 19. At the employment-termination hearing, Barnes stated that she had never before acted like she did on May 6, 2009, when she lay down on the floor in her classroom. In fact, Barnes had no history of any problems with the school, nor did she have any blemishes on her record. She had been an exemplary teacher for almost twenty years. The “abnormal” behavior complained of consisted of Barnes lying down on the floor in her classroom while students were present. Barnes explained that she was ill and in intense pain, and she only lay down after she was unable to sit. She also immediately requested assistance from other teachers.
¶ 20. From all indications, this was a one-time occurrence, with a reasonable explanation. Barnes was aware of the school’s drug policy, and she admitted she had taken a prescription drug to ease her pain after she went home on May 6, 2009. She also admitted that she refused the drug test the next day when she returned to school, although she later changed her mind and voluntarily submitted to a drug test that same day.
¶ 21. Imposing this harsh judgment of employment termination is akin to a death sentence, and this would prevent her from obtaining any other job within a school district, and likely any other state employment. Because the Board has the right to determine the appropriate punishment for a violation of its policy, I decline to make a determination here regarding the severity of her punishment. Rather, my concern lies with the Board’s decision to terminate Barnes based solely on her “refusal” to submit to a drug test, as she was acting on the advice of counsel.
¶22. Moreover, Barnes received conflicting advice as to whether or not to take the drug test. While traveling to the testing facility, she contacted a lawyer who told her to refuse the test. She also relied on a statement made by the Taylorsville *84 Attendance Center Principal, Jeff Duvall, that the penalty for not taking the drug test would only be a one-day suspension, despite the District’s written policy that an employee may be fired for refusing a drug test. Barnes then received advice from her father and Magee to take the drug test. In the end, Barnes took the drug test.
¶ 23. As such, it would appear that Barnes complied with the policy, despite her reliance on incorrect information from a school official regarding her potential punishment. If we are to hold employees to such strict application of the policy, then it is reasonable to require the same of the administrators. Thus, after considering the full record, I would affirm the chancery court’s reversal of the Board’s decision to terminate Barnes and reinstate her employment, although my reasons for doing so are different from those of the chancery court.
MYERS, BARNES AND RUSSELL, JJ„ JOIN THIS OPINION.