# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CC-02041-SCT

### *A.B.E., INC. AND THE MISSISSIPPI PUBLIC SERVICE COMMISSION*
### *v.*
### *CITY OF OXFORD, MISSISSIPPI, BIG LEAF DEVELOPMENT, INC. AND STEVEN N. McCLUSKEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/14/2000 |
| TRIAL JUDGE: | HON. NORMAN L. GILLESPIE |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | ROBERT RICHARD CIRILLI, JR. |
| | NEWT PARKS HARRISON |
| | WILLIAM BRUCE McKINLEY |
| ATTORNEYS FOR APPELLEES: | JOHN H. DUNBAR |
| | JERRY P. "JAY" HUGHES |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 07/25/2002 |
| MOTION FOR REHEARING FILED: | 8/8/2002 |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. This matter is an appeal by A.B.E., Inc. and the Mississippi Public Service Commission from an order of the Chancery Court of Lafayette County reversing the Commission's decision to grant A.B.E. a certificate of public convenience and necessity to provide water service in an area situated within one mile of the Oxford city limits.

¶2. We affirm in part and reverse in part the judgment of the Chancellor of Lafayette County. Specifically, we find that the Public Service Commission is authorized, over the objection of a municipality, to issue a certificate of public convenience and necessity to a public utility to furnish service within one mile of the corporate limits of that municipality if the Commission finds that public convenience and necessity demands the issuance of such a certificate. With that exception, all other rulings made by the Chancellor are affirmed.

## FACTS AND PROCEEDING BELOW

¶3. In July of 1975, the City of Oxford (the "City") released and relinquished to A.B.E., Inc. ("ABE") the right to provide water and sewer service to an area known as Lakeway Gardens. The following September, ABE petitioned the Mississippi Public Service Commission (the "Commission") for a certificate to provide water service for this area, which was within one mile of the City's corporate limits. The certificate was granted and later that decade, ABE acquired another certificate to provide water service to an area known as the Western Hills Subdivision. Western Hills was located to the west of Lakeway Gardens, more than one mile from the City's corporate limits. A triangular tract of land, lying within one mile of the City's corporate limits, separated the properties. Over the next twenty years, no attempt was ever made to acquire a certificate for this tract.

¶4. In October 1994, ABE received a letter from the Mississippi State Department of Health ("MSDH") expressing concern over the fact that Western Hills had only one active well. This letter encouraged ABE to construct a second back-up water well or an MSDH approved emergency tie-in to another water supply. During the spring of 1997, a developer named Mike Bennett contacted Gordon Tollison, president of A.B.E., Inc., about the possibility of furnishing water and sewer service to some proposed developments within one mile of Oxford's city limits. The site of the proposed developments was near the triangular tract of land which lay in between Lakeway Gardens and Western Hills. Realizing that this was an opportunity to link the two, while also ensuring that there would be a substantial customer base to justify the cost, Tollison stated that he was willing to furnish the service. The parties then contacted Dave Bennett, Public Works Director for the City, and Ben Smith, the City's Planning Director, concerning the proposed plan.

¶5. At the conclusion of these discussions, an agreement was reached. The agreement provided that Mike Bennett and another developer, Steve McClusky, would construct, to the City's specifications, a sewer lift station, collection lines and force mains adequate to serve their developments. It provided further that Bennett and McClusky would also pay for the construction of necessary water lines. Finally, the agreement provided that these facilities would then be conveyed to ABE who would own, operate and maintain the facilities. This was to be done with the understanding that if and when the City annexed the area, ABE would dedicate the new sewer facilities to the City at no cost. For its part, the City would release the area to ABE for both water and sewer services, and ABE would apply for a Certificate to serve the area. This proposed agreement, however, was never signed.

¶6. Later that summer, Mike Bennett became concerned about the quality of fire protection ABE's service could provide. He was also wary of the costs associated with the proposed project. With these two factors in mind, Bennett approached the City about furnishing water and sewer services to his proposed development. The City agreed, and Bennett contacted Tollison with the news. Tollison immediately attempted to discuss the matter with Dave Bennett and Ben Smith, the City officials involved in the original negotiations. When this proved unsuccessful, Tollison lodged a formal protest of the City's plans in March of 1998 at a City Council meeting convened to consider bids on the proposed project. It was during this meeting that Tollison declared his intent to file an application for a certificate covering the area.

¶7. Despite Tollison's protests and declaration, the City awarded a contract to Joe Bennett Construction Company for the construction of approximately 6,000 feet of twelve-inch water main along the south side of Highway 314. Construction began shortly thereafter and upon its completion in June 1998, the main provided service to twenty-nine three bedroom rental units developed by Steve McClusky in the area.

¶8. The day after the main was completed, on June 16, ABE petitioned the Commission for a certificate of public convenience and necessity to serve water in the following area:

> All of the West Half of the Northwest Quarter, and all that part of the East Half of the Northwest Quarter lying South of the North right-of-way line of Highway 314 in Section 18, Township 8 South, Range 3 West; also the East half of the Northeast Quarter of Section 13, Township 8 North, Range 4 West.

This description included the triangular tract lying between Lakeway Gardens and Western Hills. Ten days later, the City filed a motion to intervene in the proceedings on ABE's petition. This motion was granted by the Commission. After which, the City petitioned for a certificate to serve water in an area overlapping the area sought by ABE.

¶9. The dockets were consolidated and on December 2, 1998, the Commission conducted a hearing on the certificate applications in Panola County, Mississippi. On February 3, 1999, Commissioner Bo Robinson entered a Recommended Order to the Commission. He concluded that public convenience and necessity required the issuance of a certificate to the City covering all of the West Half of the Northwest Quarter of Section 18 south of Highway 314. Commissioner Robinson also concluded that public convenience and necessity required the issuance of a certificate to ABE covering the remaining portions of the area, as well as that part of ABE's requested area lying more than one mile outside the city limits.

¶10. On June 2, 1999, the Commission entered its Final Order Adopting the Recommended Order and the Order of the Commission. Both parties appealed to the Chancery Court of Lafayette County. On November 15, 2000, the chancery court entered its order affirming the Commission's decision in all aspects except for that portion of land within one mile of the City's corporate limits. As to that area, the chancellor held that, as a matter of law, the Commission did not have statutory authority to grant a certificate to ABE covering any area situated within a mile of the City of Oxford's corporate limits, over the City of Oxford's objection. ABE now appeals the chancellor's decision.

## STANDARD OF REVIEW

¶11. This Court applies the same standard of review that the lower courts are bound to follow when reviewing the decisions of a chancery or circuit court concerning an agency action. ***Town of Enterprise v. Miss. Pub. Serv. Comm'n,*** 782 So.2d 733, 735 (Miss. 2001)(*citing **Miss. Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors,*** 621 So.2d 1211, 1216 (Miss.1993)). Therefore, this Court will entertain the appeal to determine whether the order of the administrative agency: 1) was unsupported by substantial evidence; 2) was arbitrary or capricious; 3) was beyond the power of the administrative agency to make; or 4) violated some statutory or constitutional right of the complaining party. ***Id.*** at 1215.

## DISCUSSION

### I.

### (a)

¶12. ABE submits that Miss. Code Ann. § 77-3-1(Rev. 2000) does not give a municipality the exclusive right to provide service within the one-mile corridor. Section 77-3-1 states in pertinent part that, "any public

utility, owned and operated by a municipality, shall not be subject to the provisions of this article, except as to the extension of utilities greater than one mile outside corporate boundaries." Miss. Code Ann. § 77-3-1 (Rev. 2000). ABE further submits that the chancellor erred in his determination that the Commission was without authority to grant a certificate of public necessity and convenience in the present case.

¶13. The controlling case on this issue is *Town of Enterprise v. Miss. Pub. Serv. Comm'n,* 782 So.2d 733 (Miss. 2001). There, a non-profit utility, Harmony Water Association, petitioned the Commission for a certificate in order to expand its service area to include land that was within one mile of the town of Enterprise's corporate limits. *Id.* at 733. Enterprise contested the application as to this area, asserting that it had the exclusive right to provide service within this one mile corridor. It argued that there was no present need for the extension of service and if in fact the need did arise, that it would be the one to provide the service. *Id.* The Commission rejected Enterprise's argument and granted a certificate to Harmony. Enterprise appealed the matter to the Chancery Court of Clarke County, and the Chancellor affirmed the Commission's decision. *Id.*

¶14. We heard the case and held that § 77-3-1 did not preclude a private utility from operating within one mile of a municipality's city limits. *Id.* at 735. We opined that in previous cases we had consistently held that § 77-3-1 did not grant municipalities the exclusive right to operate utilities within one mile of their corporate borders. *Id. See also Miss. Power Co. v. East Miss. Elec. Power Ass'n,* 244 Miss. 40,140 So.2d 286 (1962)(rejecting City of Louisville's argument that the Act creating the Public Service Commission granted Louisville the exclusive right to operate within one mile of its boundaries); *Capital Elec. Power Ass'n v. City of Canton,* 274 So.2d 665 (Miss. 1973)(though exempted from the jurisdiction of the Commission, the city did not have unfettered discretion to "run its lines anywhere it may choose within the city and within the one-mile corridor).

¶15. Here, the Commission's order granting a certificate of public convenience and necessity was certainly within the power of that administrative agency. Therefore, the Chancellor erred in holding that the Commission lacked the authority to grant a certificate of public convenience and necessity to ABE.

**(b)**

¶16. ABE next urges that public policy requires Commission jurisdiction within the one-mile corridor. It submits that the Commission has the authority to issue such a certificate if the public interest requires the Commission to so act. ABE urges this Court to acknowledge that the Commission would not have issued a certificate if it did not think that it was necessary. While certainly persuasive, this line of reasoning begs the question. It is not whether the Commission thinks it is in the public interest to grant the certificate, but whether the Commission may properly do so under state law.

¶17. Again, this Court's decision in *Town of Enterprise* determined that, although Miss. Code Ann. § 77-3-1 provides an exemption for municipalities from Commission regulation for areas within one mile of their corporate limits, the statute does not grant municipalities the exclusive right to operate utilities within one mile of their corporate border nor does the statute preclude a private utility from operating within one mile of a municipality's city limits. 782 So.2d at 735. Thus, the Commission is authorized under state law to grant certification to a public utility to provide service for an area within one mile of a municipality's city limits.

**II.**

¶18. ABE finally submits that this Court's decision in *Town of Enterprise* should be revisited because it casts doubt on a long line of cases which have repeatedly held that a certificate of public convenience and necessity grants the holder the exclusive right to serve the area covered by the certificate. ABE takes exception with the following language:

> Even after Harmony's certification, nothing in the statutes prohibits Enterprise from providing water service to this area. It is exempt from Commission regulation and, therefore, does not need a certificate of need within one mile of its boundaries. **As a result both Harmony and Enterprise have the right to serve the area at issue.**

782 So.2d at 737 (emphasis added).

¶19. ABE argues that the manifest policy of the Public Utilities Act is to prevent the duplication of facilities and certificates. ABE relies on *Cities of Oxford v. Northeast Miss. Elec. Power Ass'n*, 704 So.2d 59 (Miss. 1997). In that case, the plaintiffs, twelve Mississippi municipalities, sought reversal of a long line of Mississippi cases which held that certificates of public convenience and necessity were exclusive. *Id.* at 64. This Court concluded that: 1) a certificate of public convenience and necessity is an exclusive right to provide service to the individuals in that certificated area; and 2) municipal utilities may not provide their utility services within the certificated areas of other public utilities. *Id.* at 68-70.

¶20. This Court was also confronted with this question in *Mississippi Power Co. v. East Miss. Elec. Power Ass'n,* 240 Miss. 44, 140 So.2d 286 ( 1962). The Court opined, "the question as to whether the right of East Mississippi in said areas is exclusive depends, under the act and decisions of this Court, upon whether East Mississippi renders adequate service." *Id.* at 288. Moreover in *Capital Elec. Power Ass'n v. City of Canton*, 274 So.2d 665,668 (Miss. 1973), the Court held "that a certificate of public convenience and necessity issued by the Public Service Commission to a public utility is an exclusive permit [ to serve] the area designated and certificated to the utility so long as the utility is capable and willing to provide service to the persons within the area."

¶21. While certainly not an absolute grant of exclusivity, the Court's holdings in both *Mississippi Power* and *Capital Elec.* indicate that a utility's ability to provide service in an area that has been certificated to it by the Commission, shall not be infringed upon by an adjacent municipality. This holds true so long as the utility is willing and able to provide adequate service to the area. *Cities of Oxford* is even clearer on this point. It is of no consequence that the certificated area lies within one mile of the municipality's corporate limits.

¶22. Furthermore, the Legislature, via House Bill 997, 2002 Miss. laws ch.303, has recently enacted certain statutory amendments to Miss. Code Ann. § 77-3-13 which provide that "nothing in this chapter or other provisions of law shall be construed as allowing a municipally owned plant, project or development, route, line or system or extension thereof in areas certificated to another utility." House Bill 997 was signed by the Governor on March 4, 2002, and became effective that same day.

## CONCLUSION

¶23. We reverse the part of the chancellor's decision overturning the Commission's order granting ABE a certificate for any portion of the contested area within one mile of the City of Oxford's corporate limits, and we reinstate that portion of the commission's order. All other aspects of the Chancellor's decision are

affirmed.

¶24. **AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.**

**PITTMAN, C.J., McRAE, P.J., DIAZ AND CARLSON, JJ., CONCUR. SMITH, P.J., DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER AND EASLEY, JJ., COBB, J., NOT PARTICIPATING.**

**SMITH, PRESIDING JUSTICE, DISSENTING IN PART:**

¶25. I believe that the majority opinion correctly states the law, however, I think it avoids the real issue in this case. As it is a factual one, I believe the Commission should be given deference, and thus the majority still comes to the correct conclusion. Although, I do not believe that their conclusion differs from that of the chancellor.

¶26. As the law currently stands, a municipality cannot encroach upon a pre-existing certificated area in the one-mile corridor outside the city limits. Further, in ***Town of Enterprise v. Mississippi Pub. Serv. Comm'n***, 782 So. 2d 733 (Miss. 2001), this Court held that the MPSC can grant a certificate in the one-mile corridor, over an area the adjacent municipality has never served nor contracted to serve, even if the municipality objects to the certificate. Both parties recognize this as the law. Thus, the essential question appears to be whether the MPSC granted A.B.E., Inc. a certificate to serve an area that the City of Oxford was already serving, or had contracted to serve. The Commission does not discuss its findings in regard to what area was already being served, however, the chancellor appeared to reverse for consideration of that very issue. I believe the chancellor was correct in his reasoning, as I disagree with the majority as to his holding. I believe that the chancellor found the law to be the same as I have stated (and the same as that stated by the majority). Further, I believe the only reason he reversed the Commission was to allow the Commission to tailor their findings more precisely to the law, which would be that A.B.E. could not be granted a certificate for areas already being served by the City (or areas they had contracted to serve).

¶27. As stated in the chancellor's order "the [MPSC] does not have a right to award a certificate to a competing utility (A.B.E., Inc.) for an area that the City of Oxford has not only contracted to serve, but, also, is serving in the one-mile corridor." Thus, I would affirm the chancellor's ruling as I believe that his decision is in accord with the law.

**WALLER AND EASLEY, JJ., JOIN THIS OPINION.**