# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CC-01183-SCT

*PUBLIC EMPLOYEES' RETIREMENT SYSTEM*

*v.*

*JANNIE M. DISHMON*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/2008 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARY MARGARET BOWERS |
| ATTORNEY FOR APPELLEE: | GEORGE S. LUTER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED -07/23/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     This appeal by the Public Employees Retirement System (PERS) arises from an order entered by the Circuit Court of the First Judicial District of Hinds County, Mississippi, on March 19, 2008. The circuit court overturned an administrative decision by PERS denying disability benefits to Jannie M. Dishmon, a Department of Human Services (DHS) employee.

¶2.     Dishmon's claim for disability benefits initially was reviewed and denied by the PERS Medical Board in 1997. That decision was appealed to the PERS Disability Appeals Committee. A hearing was held wherein testimony and evidence was received. The Committee presented its recommendation to the PERS Board of Trustees, and the Board denied Dishmon's claim. On appeal to the circuit court, Judge Tomie Green ruled in favor

of Dishmon, finding that the Board arbitrarily and capriciously had ignored substantial evidence in support of disability. PERS appealed to this Court which found reversible error in the fact that a member of the Medical Board also had sat on the Disability Appeals Committee. ***Pub. Ret. Sys. v. Dishmon***, 797 So. 2d 888 (Miss.2001). This Court remanded the case to the circuit court with instructions that the matter be remanded to PERS for a fair and impartial review of Dishmon's disability claim. Following the hearing on remand, the Board again adopted the recommendation of the Disability Appeals Committee to deny Dishmon's application for disability benefits as defined in Miss. Code Section 25-11-113. Dishmon appealed PERS' decision to the circuit court. On March 19, 2008, Judge Green reversed the decision of the Board, finding PERS' actions to be arbitrary and capricious. Having reviewed the record, this Court affirms the circuit court's ruling.

### STATEMENT OF THE FACTS

¶3. Dishmon began working as an eligibility worker for the Warren County DHS in March 1985. As an Eligibility Worker II, Dishmon was responsible for assessing the qualifications of potential recipients of food stamps and AFDC (Aid to Families with Dependent Children) funding. Her job entailed interviewing candidates, documenting her findings, and other related activities. During her employment, Dishmon suffered from a number of medical problems which she claimed included osteomyelitis, insulin dependent diabetes mellitus (IDDM), hypertensive cardiovascular disease (HCVD), cellulitis of the great toe, degenerative arthritis, atherosclerotic vascular disease to the lower extremities, carpal tunnel syndrome, anxiety, and depression. Dishmon was advised by her treating

2

physician, Dr. Paul Pierce[1], to seek medical retirement. Dishmon took leave without pay from DHS on July 5, 1996.

¶4. Dishmon filed her initial claim with PERS for disability retirement benefits pursuant to Mississippi Code Section 25-11-113(1)(a) in March of 1997. Lois L. Price, Dishmon's supervisor, certified to PERS that Dishmon was unable to perform her job duties. Price also indicated that Dishmon was not offered another job within her agency or any other agency without material reduction in compensation or change in location of employment. Additionally, Dr. Pierce submitted a "Statement of Examining Physician" form to PERS which stated he found Dishmon to be permanently disabled.

¶5. In March of 1997, the Social Security Administration found Dishmon completely disabled and awarded her benefits. On March 21, 1997, Dr. Pierce again wrote a letter to PERS stating that Dishmon's "physical impairment preventing her from work remains unchanged," and that she "is still permanently disabled." The Medical Review Board reviewed her application, which included the Social Security award, letters from her physician, and her description of other physical implications. The Board did not find substantial evidence in support of a permanent disability as defined in Section 25-11-113. Miss. Code Ann. § 25-11-113 (Rev. 2006). Dishmon then appealed the Medical Board ruling to the Disability Appeals Committee.

¶6. The Committee conducted a formal hearing in its de novo review and agreed with the finding of the Medical Board that Dishmon had failed to prove she was unable to perform her duties as an Eligibility Worker II. The material for review consisted of Dishmon's

---

[1] Dr. Pierce is not related to the writing Justice.

3

testimony, findings of the Medical Review Board, her employer's statements, a letter from Dishmon's physician, Dishmon's medical records, and the disability award from the Social Security Administration. No physician on the Medical Board of PERS conducted a medical examination, nor did they request an independent physician to examine Dishmon. The record reflects the only evidence of medical examination and medical opinion of Dishmon's medical condition and disability were records submitted by Dr. Pierce, which included, however, diagnostics from other treating physicians.

¶7. Following the decision of the Medical Board to deny benefits, Dishmon appealed to the circuit court. The circuit court reversed the decision of the Board and found that PERS had acted arbitrarily and capriciously by disregarding substantial evidence in favor of Dishmon. PERS appealed the Circuit Court's decision to this Court. *Dishmon*, 797 So. 2d 888. This Court reversed and remanded Dishmon's case for a new hearing after finding that one of the physicians who sat on the PERS Medical Board also had sat on the PERS Disability Appeals Committee. *Id*.

¶8. On remand, Dishmon was afforded a second hearing before the Disability Appeals Committee which then consisted of Special Assistant Attorney General Beverly Bolton, presiding hearing officer, and Drs. David Duddleston and Mark Meeks, University Medical Center physicians.

¶9. At the start of the hearing, on August 13, 2001, Dishmon requested that the record remain open to allow her to take Dr. Pierce's deposition. Hearing Officer Bolton stated she would take the request under advisement. Dishmon testified that she had left DHS in 1997 due to deteriorating health which resulted in several hospitalizations. Dishmon stated that,

4

although she had attempted on several occasions to go back to work, she was unable to continue due to carpal tunnel syndrome in her right hand which caused excessive pain and difficulty, degenerative disc disease, and difficulty controlling her diabetes in addition to osteomyelitis, thyroid nodules, and pain in her upper and lower extremities and neuropathy causing burning pain in her feet.

¶10. Joyce Shepherd, Warren County Department of Human Services Supervisor II, testified that she had observed Dishmon "holler out" with pain, be unbalanced on her feet, and sometimes appear to be feeling unwell. Shepherd stated that, at the time Dishmon worked at DHS she had the highest caseload in the southeastern states and that Dishmon was handling a case load of around 350 people. She said that her job would require her to mark paper, take telephone calls, and have three or four people coming in at the same time. She added that it was a very stressful job and if one had any kind of physical or emotional illness, there was no way he or she could perform the job.

¶11. Shepherd further testified that Dishmon tried several times to come back to work after being off for a while; that Dishmon was a dedicated public servant; but that Dishmon could not do the job.

¶12. On November 22, 2001, Dishmon noticed the deposition of Dr. Paul Pierce to PERS Attorney Margo Bowers for November 29, 2001. On November 28, 2001, Bowers wrote and objected to such deposition and stated the medical records should "speak for themselves without necessity of a deposition."

¶13. In his deposition, Dr. Pierce testified that his prior statements regarding Dishmon's health were accurate and that, in his opinion to a reasonable degree of medical certainty, she

5

was unable to perform her job as described in 1997. Dr. Pierce said that he thought he was more equipped to decide whether Dishmon was disabled than someone who only had reviewed her records or heard her testify briefly, adding:

> I don't think there's any question I'm certainly in a better position to do that. I think you also have to look at my position and my record. I'm not one of these doctors that writes to put everybody on disability. In fact, I do not write for people on disability. I like people to continue to work, but in certain cases it's the proper thing to do, and in Ms. Dishmon's case I don't think there's any question about it.

¶14. On May 31, 2002, PERS informed Dishmon that her claim would be presented to the Disability Appeals Committee. On June 10, 2002, Dishmon appeared before the Disability Appeals Committee, consisting of new Hearing Officer Sheila Jones, and Drs. Duddleston and Meeks, and before whom the deposition and Dr. Pierce's additional records were introduced into evidence. The Disability Appeals Committee denied Dishmon's application for disability retirement. Jones wrote:

> We understand and applaud Dr. Pierce for volunteering to be his patient's advocate and we believe that he had her best interest at heart, but there is a huge difference between our definition of disability and that of the medical community or other legal arenas, for that matter. Our definition is quite narrow and must be supported by objective and credible medical evidence. It must reach the level that this Committee be persuaded likewise. There is a lot of evidence, but not evidence that supports disability as defined by statute.

¶15. On August 27, 2002, the PERS Board of Trustees adopted the recommendation of the Disability Appeals Committee and denied Dishmon's application for disability retirement. Dishmon appealed that decision to the Circuit Court for a second time.

¶16. On appeal to the circuit court, Judge Green reversed the denial of Dishmon's application for disability. In her Memorandum Opinion and Order, Judge Green stated that

6

"[t]here is speculation among the board and committee members as to whether many of the illnesses Ms. Dishmon presently suffers from were actually present during her time of employment with DHS." Judge Green noted that, rather than require Dishmon submit to an independent medical examination, PERS merely reviewed the statement submitted by Dr. Pierce, as well the treatment notes from all of Dishmon's treating and examining physicians, and held that there was no showing of permanent disability. She said, based on its review, PERS had concluded that the evidence failed to support Dishmon's claim regarding her inability to maintain proper control over her various illnesses.

¶17.    Judge Green concluded that "although there is some evidence that some of the illnesses can be controlled with the medication prescribed, overall Ms. Dishmon can be termed disabled in accordance with Mississippi Law." Therefore, "the decision of [PERS] should be overturned in as much as there is substantial evidence of disability and the decision . . . was arbitrary and capricious."

## STANDARD OF REVIEW

¶18.    This Court's standard of review of an administrative agency's finding and decisions is well-established. Rule 5.03 of the Uniform Circuit and County Court Rules provides that an agency's conclusions must remain undisturbed unless the agency's order: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one's constitutional rights. *Pub. Employees' Ret. Sys. v. Marquex*, 774 So. 2d 421, 425 (Miss. 2000) (citing *Fulce v. Pub. Employees' Ret. Sys.*, 759 So. 2d 401, 404 (Miss. 2000); *Davis v. Pub. Employees' Ret. Sys.*, 750 So. 2d 1225, 1229 (Miss. 1999); *Brinston v. Pub. Employees' Ret. Sys.*, 706 So. 2d 258, 259 (Miss. Ct.

7

App. 1998)). A rebuttable presumption exists in favor of the action of an administrative agency, and the burden of proof is on the party challenging an agency's action. ***Brinston,*** 706 So. 2d at 260 (citing ***Miss. Comm'n on Envtl. Quality v. Chickasaw County Bd of Supervisors,*** 621 So. 2d 1211, 1215 (Miss. 1993)). This Court is not entitled to substitute its own judgement for that of PERS, and it is impermissible for a reviewing court to reweigh the facts of the case. ***Marquez***, 774 So. 2d at 425 (citing ***Miss. Pub. Serv. Comm'n v. Merchants Truck Line, Inc.***, 598 So. 2d 778, 782 (Miss. 1992).

## LEGAL ANALYSIS

**I. WHETHER THE CIRCUIT COURT SUBSTITUTED ITS JUDGEMENT FOR THAT OF PERS WHEN IT FOUND THE DECISION TO DENY DISABILITY BENEFITS WAS ARBITRARY AND CAPRICIOUS.**

¶19. The primary question before this Court is not, as the trial court concluded, whether there is "substantial evidence" of a disability, but whether the record contains substantial evidence to support PERS' finding that Dishmon is not disabled. ***Dishmon,*** 797 So. 2d at 892. "Substantial evidence" has been defined by this Court as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." ***Marquez***, 774 So. 2d at 425 (quoting ***Delta CMI v. Speck***, 586 So. 2d 768, 773 (Miss. 1991)). The question before the PERS Medical Board, Disability Committee, and Board of Trustees was whether or not Dishmon's claim met the statutory requirements for receipt of permanent disability benefits. As fact-finder, it is for PERS to determine which evidence is more believable or carries more weight. ***Pub. Employees' Ret. Sys. v. Howard***, 905 So. 2d 1279, 1287 (Miss. 2005). It is not for this Court to determine whether the claimant has presented enough evidence to prove he

8

or she is disabled, "but whether PERS has presented enough evidence to support its finding that the claimant is not disabled." ***Pub. Employees' Ret. Sys. v. Henderson***, 867 So. 2d 262, 264 (Miss. Ct. App. 2003) (citing ***Doyle v. Pub. Employees' Ret. Sys.***, 808 So. 2d 902, 905 (Miss. 2002)).

¶20. For purposes of a disability determination; Mississippi Code Section 25-11-113(1)(a) contains two categories. First, the Medical Board, after a medical examination, must certify that the applicant is "mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that the member should be retired[.]" Miss. Code Ann. § 25-11-113(1)(a) (Rev. 2006). This option covers employees for any injury that they prove rises to the debilitating level required by statute, whether or not it occurred as a result of work-related activities. Second, the Medical Board must apply the statutory definition of "disability" which reads:

> The inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction to compensation, or the incapacity to perform the duties of any employment covered by the Public Employees' Retirement System that is actually offered and is within the same general territorial work area, without material reduction in compensation.

Miss. Code Ann. § 25-11-113(1)(a).

¶21. After a determination has been made as to whether an employee is disabled, disability benefits are available to PERS members in two ways: (1) regular disability benefit payable to members who have at least four years of creditable service provided he/she became a member of the System prior to July 1, 2007, and who become disabled for any reason; and (2) hurt-on-the-job disability benefit, payable to members regardless of the number of years of

9

creditable service, where the member becomes disabled due to an injury occurring in the line of duty. ***Pub. Employees Ret. Sys. v. Stamps,*** 898 So. 2d 664, 672 (Miss. 2005) (citing Miss. Code Ann. §§ 25-11-113 and 25-11-114 (Rev. 2006).

¶22.   PERS asserts that the circuit court reweighed the facts and substituted its judgment for that of the administrative agency in finding that Dishmon was entitled to receipt of disability benefits.  PERS argues that the decision by the Board of Trustees is based upon substantial evidence and should be reinstated, as the facts presented in the record before this Court support the decision of the PERS Board of Trustees that Dishmon is not entitled to the receipt of regular disability benefits pursuant to Mississippi Code § 25-11-113.  PERS avers that, while there is no doubt Dishmon suffers from a plethora of medical problems, they are not so severe that they warrant a decision that Dishmon is totally disabled.

¶23.   Dishmon contends, however, that the first denial of her claim by the PERS Medical Board and the subsequent affirmance of such denial by the PERS Disability Appeals Committee was arbitrary and capricious.  Dishmon maintains that her medical records reveal that she has been diagnosed by Dr. Pierce, her long-time treating internist, with osteomyelitis, insulin dependent diabetes mellitus (IDDM), hypertensive cardiovascular disease (HCVD), cellulitis of the great toe, degenerative arthritis, atherosclerotic vascular disease to the lower extremities, carpal tunnel syndrome, anxiety, and depression.  Yet she claims, PERS ignored the opinions of Dr. Pierce, even failing to participate in his deposition, or to obtain an independent medical exam.  Dishmon asserts that this failure on the part of PERS presumably leaves Dr. Pierce's opinions unrebutted and uncontradicted.  Dishmon therefore argues that she has effectively rebutted the initial denial of her claim by the PERS Medical Board and the

10

subsequent denial by the PERS Disability Appeals Committee, and that such denial is therefore unsupported by substantial evidence.

¶24.    While PERS correctly points out that it is not required by law or regulation to secure an independent medical examination, such failure may constitute a factor in determining whether or not the agency has presented sufficient evidence to support its finding that the claimant is not disabled.  In *Public Employees' Retirement System. v. Dearman,* 846 So. 2d 1014, 1018 (Miss. 2003), this Court affirmed the circuit court's ruling which reversed a PERS decision denying disability benefit based, *inter alia*, on PERS' failure to offer any medical evidence which disputed the opinions of claimant's treating physicians.  In noting that the opinions provided by the physicians on the Medical Board and the Disability Appeals Committee were not conclusive, the Dearman Court stated:

> PERS cannot choose to ignore the only evidence in the record from the examining physician, especially where it chose not to exercise its right to an independent medical evaluation under Miss. Code Ann. § 25-11-113(1)(c).

*Id.* at 18.

¶25.    Here, the Committee provided a lengthy, comprehensive analysis as to why each individual ailment afflicting Dishmon at the time she applied for disability benefits did not qualify her for disability retirement as contemplated by Mississippi Code Section 113. However, there is no evidence in the record to contest Dr. Pierce's medical conclusion that Dishmon, based on her numerous ailments, can no longer work.  *Cf. Thomas v. Pub. Employees' Ret. Sys.*, 995 So. 2d 115, 120 (Miss. 2008) (finding that, because there was no evidence in the record that the Appeals Committee had ignored or rejected evidence in its duties as factfinder, substantial evidence supported its findings).

11

¶26. The Committee acknowledged that Dishmon is a diabetic, but disputed Dr. Pierce's opinion that her diabetes is not well-controlled. The Committee stated, "we do not find objective medical evidence that the diabetes fails to be under control." The Committee thus concluded that the diabetes itself was not disabling either medically or occupationally.

¶27. With regard to hypertensive cardiovascular disease, the Committee stated, "it is a well known fact that persons with diabetes usually have trouble in this area . . . , [but] it appears that the hypertension has been well controlled over the years." The Committee further stated, "while Ms. Dishmon does carry the diagnosis of hypertension, and it probably is due at least in part to her weight and her diabetes, it is obviously and thankfully controlled and does not constitute occupational disability as defined in this matter."

¶28. The Committee disputed whether Dr. Pierce's diagnosis of osteomyelitis of Dishmon's right great toe was accurate. The Committee opined that, while osteomyelitis is a serious infection because it is in the bone itself, it is debatable as to whether Dishmon actually had osteomyelitis or merely cellulitis, which is an infection of the tissues rather than the bone of Dishmon's toe.

¶29. The Committee disagreed with Dr. Pierce that Dishmon suffered disabling arthritis at the time she filed her disability claim, and also with his testimony that Dishmon could not stand or sit for long periods of time. The Committee opined, "we note x-rays in 2000 that show a mild degenerative disc disease of the low back. It seems that based upon the objective medical record that the lower back problems Ms. Dishmon experiences began after her date of termination, and thus, cannot be considered with regard to disability at the date of termination."

¶30. As to Dr. Pierce's testimony pertaining to Dishmon's carpal tunnel syndrome, the Committee questioned whether the carpal tunnel syndrome was disabling, and concluded that there was no objective proof that it was. The Committee noted that there were no EMG studies to substantiate Dr. Pierce's testimony. The Committee acknowledged that Dr. Tiwari had found carpal tunnel on the right side, but because the Committee was without the report itself, could not determine the degree of carpal tunnel syndrome Dishmon had at the time of her filing.

¶31. Finally, the Committee took note of Dr. Pierce's testimony that Dishmon had depression, and was taking Elavil. However, because no entries were found in Dishmon's medical records documenting serious depression, and no record of referral to a psychiatrist or a counselor, the Committee determined that Dishmon's depression was neither severe nor disabling.

¶32. The analysis section of the Committee's proposed recommendation failed to specifically mention Dishmon's diagnosis of atherosclerotic vascular disease of the lower extremities.

¶33. PERS is correct that it has the duty to determine which of the physicians' assessments and other documentation it should rely on in making a determination. *See **Pub. Employees' Ret. Sys. v. Stamps,*** 898 So. 2d 664, 674 (Miss. 2005) (the "weight given to the statements of a personal physician is determined by PERS, and it is not for the courts to reweigh the facts"). However, when PERS rejects individual assessments outright, it must not leave in doubt the cumulative effect that each ailment creates for the claimant as a whole, in making its determination.

13

¶34. For example, PERS fully acknowledges that Dishmon suffers from diabetes, and that this condition is responsible for most of Dishmon's other ailments, such as the infection of Dishmon's toe. Based solely on its interpretation of Dishmon's medical records, rejected Dr. Pierce's diagnosis that the infection was the result of osteomyelitis, which it acknowledged is a serious infection involving bone. Yet, PERS admitted that it could not definitively say that Dishmon did not suffer from osteomyelitis, opining that if she did have osteomyelitis, she was successfully treated with antibiotics and "amputation [was] not necessary at least up to the point of the last record in this matter."

¶35. In disregarding Dishmon's diagnosis of carpal tunnel syndrome, PERS simply found many unanswered questions as to whether Dishmon's carpal tunnel syndrome was actually disabling, essentially concluding that if she did, in fact, have the condition, that there was no objective proof that it was disabling.

¶36. Dishmon provided objective medical proof from Dr. Pierce that she suffers from degenerative arthritis. The Committee, however, rejected the diagnosis out-of-hand based on a finding that x-rays taken in 2000 appeared to suggest that Dishmon was not suffering from this condition when she filed her claim in 1997. But the record indicates otherwise, as Dr. Pierce made his diagnosis prior to Dishmon filing her claim in 1997.

¶37. This Court finds that the Committee's analysis is without support in the record. When coupled with the fact that PERS chose not to exercise its right to an independent medical examination, this Court is unable to find that PERS' decision denying disability benefits in this matter is supported by the evidence.

14

¶38. In ***Public Employee's Retirement System v. Robert Ann Shurden,*** 822 So. 2d 258, this Court said that the receipt of disability benefits to deserving claimants should not be unnecessarily out of reach, stating:

> PERS should not stray from its purpose of Miss. Code Ann. § 25-11-113, to compensate disabled employees that have not met the 25 year criteria, in denying benefits nor set the bar so high that this purpose is frustrated.

***Id.*** at 264.

## CONCLUSION

¶39. The circuit court did not err in finding the PERS decision to be arbitrary and capricious, as its denial of benefits to Dishmon was unsupported by substantial evidence.

¶40. **AFFIRMED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, KITCHENS AND CHANDLER, JJ., CONCUR. LAMAR, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**LAMAR, JUSTICE, DISSENTING:**

¶41. I respectfully dissent from the majority's opinion, as it appears to me there is substantial evidence to support PERS' decision and, in my opinion, the circuit court improperly reweighed the evidence. As an administrative agency, PERS sits as the finder of fact, *not* the reviewing court. ***Pub. Employees' Ret. Sys. v. Cobb***, 839 So. 2d 605, 609 (Miss. Ct. App. 2003). Neither the circuit court nor this Court can reweigh the evidence, as it appears to have done at present.

¶42. The majority cites PERS' failure to contest the evidence provided by Dishmon's doctor or to submit Dishmon to an independent examination, but the Legislature has imposed no requirement upon PERS to do either. Rather, PERS, as the finder of fact, has the discretion

15

to objectively review the evidence and determine the weight to be given to statements of personal physicians. ***Pub. Employees' Ret. Sys. v. Stamps***, 898 So. 2d 664, 674 (Miss. 2005) (citing ***Pub. Employees' Ret. Sys. v. Dearman***, 846 So. 2d 1014 (Miss. 2003)). Contrary to the majority's finding, PERS did not ignore the evidence presented in this case but thoroughly discussed each disability listed, often citing years' worth of tests and readings within Dr. Pierce's report that reasonably supported its findings.

¶43. For clarity, I offer the following factual history. Dishmon took leave without pay due to alleged disability on July 5, 1996.[2] Dishmon filed her initial claim with PERS for disability retirement benefits in 1997. Initially, Dishmon claimed chronic osteomyelitis, insulin-dependent diabetes mellitus, and hypertensive cardiovascular disease, with poor prognoses on all three, as preventing her from performing her job. She stated that her frequent activities on the job included sitting, writing, and repetitive fine manipulation of her hands. She occasionally walked and used her hands for simple grasping, pushing, and pulling.

¶44. Dishmon's second hearing before PERS began on August 13, 2001. At that hearing, she alleged the same complaints as presented at the 1997 hearing, in addition to: carpal tunnel syndrome, degenerative back disease, thyroid nodules, neuropathy, trouble concentrating, and pain in her upper and lower extremities. Dishmon also testified that she had begun treatment for depression in 1997.

---

[2]According to Section 25-11-113(1)(b), "[a]ny inactive member. . . who has withdrawn from active state service, is not eligible for a disability retirement allowance unless the disability occurs within six (6) months of the termination of active service **and** unless satisfactory proof is presented to the board of trustees that the disability was the direct cause of withdrawal from state service." Miss. Code Ann. § 25-11-113(1)(b) (Rev. 2006) (emphasis added).

16

¶45. The Disability Appeals Committee, which consisted of two internists and a nurse, reviewed Dishmon's claims in depth. It started by analyzing Dishmon's allegations in her original filing. The Committee noted that the medication list, the hospitalization list and records, and Dr. Pierce's office records all were dated after 1996. Dishmon stated that these were all she could produce, as her records were voluminous and would have been too expensive to copy in full.

¶46. The Committee noted that the degenerative disk disease Dishmon referred to was diagnosed in 1998, after she already had left work. The Committee also found that osteomyelitis was not referenced in any of her medical records. Dishmon testified that she began intravenous treatment for the osteomyelitis with Vancomycin around June of 1997, though it was not diagnosed until 1998. The Committee noted that, even if Dishmon had suffered from osteomyelitis in 1996, it was successfully treated with antibiotics and therefore no longer contributed to her inability to perform her job, which consisted mostly of sitting. The Committee also noted that nothing in her records up to the date she left work mentioned neuropathy; nor was there any mention of anxiety, depression, or atherosclerotic vascular disease in her doctor's records from 1996.

¶47. Additionally, regarding the diagnosis of chronic obstructive pulmonary disease (COPD), the Committee noted that no pulmonary specialists were consulted, no pulmonary function studies were performed, and there was no listing of medications for pulmonary problems. Her complaints of lower-back pain began in 1997 or 1998, and x-rays showed mild degenerative disk disease of the lower back in 2000. Furthermore, the record shows that Dishmon's gastrointestinal problems did not arise until after the date of termination.

¶48. The Committee thoroughly reviewed levels of blood glucose taken at least twelve times between June 1996 and December 1997, all of which were below what the medical community finds serious, much less disabling. The Committee did a similar analysis regarding blood pressure readings over the years and found Dishmon's blood pressure to be well-controlled. The Committee noted that cardiac tests from July of 1995 came back normal, and a cardiologist took Dishmon off some of her numerous medications in 2001, with no apparent problems. The Committee noted hypothyroidism is not uncommon and should not be disabling as long as medication is taken. Since Dishmon did not see a psychiatrist or counselor regarding her depression, the Committee concluded it was probably not severe, let alone disabling.

¶49. Lastly, the Committee discussed what it believed to be the most important allegation, which was carpal tunnel syndrome. The Committee noted that there were no tests confirming carpal tunnel syndrome until 1999, nor was it mentioned in her medical records from 1996. They also noted that the orthopedist had placed no restrictions on Dishmon. The Committee ultimately concluded the carpal tunnel syndrome was not disabling, because Dishmon's complaints regarding carpal tunnel were sporadic rather than consistent, and she had waited four years to have surgery, while most people with disabling carpal tunnel have the surgery immediately.

¶50. In its "Conclusions of Law," the Committee looked at Dishmon's numerous complaints as a whole. It highlighted many of the above findings as well as Dr. Pierce's entry that "he thought nothing was wrong with Ms. Dishmon, yet she insisted on testing." The Committee concluded that Dishmon was not statutorily disabled.

¶51. On appeal, the trial court noted evidence that some of the illnesses can be controlled with medication and that some of the illnesses were nonexistent when Dishmon took leave without pay. Yet the court still concluded that PERS ignored substantial evidence of disability, and that the decision was arbitrary and capricious, in large part, because PERS did not require Dishmon submit to an independent medical examination.

¶52. This Court should not impose a duty upon PERS to bring forth its own evidence. In *Case v. Public Employees' Retirement System*, the appellant argued that PERS' denial of her benefits was not supported by substantial evidence, because her disability was supported by the reports of her doctors, and PERS had failed to order a separate psychiatric evaluation. *Case v. Pub. Employees' Ret. Sys.*, 973 So. 2d 301, 310-11 (Miss. Ct. App. 2008). The Court rejected this argument, however, because the Committee, using its medical expertise, had throughly reviewed the medical records and sufficiently explained its conclusion. *Id*. at 313. Indeed, the Court noted: "'[p]art of the benefit of having physicians on the Disability Appeals Committee is so that they can analyze the medical claims. When a thorough set of findings and conclusions explain the expertise that those physicians applied, we find no fault in relying on such expertise.'" *Id*. at 312-13 (quoting *Flowers v. Pub. Employees' Ret. Sys.*, 952 So. 2d 972, 980 (Miss. Ct. App. 2006)). Lastly, the Court noted that the applicable requirement is not an independent evaluation, but an explanation that goes beyond mere conclusions. *Id*.

¶53. In the case *sub judice*, the Disability Appeals Committee has thoroughly gone through each alleged disability, often citing years' worth of tests, to explain its findings. In its "Conclusions of Law," the Committee explicitly stated it had examined the cumulative effect of each condition affecting Dishmon; it referenced the objective medical records and tests

19

provided by Dishmon; and it explained why Dishmon's conditions as a whole do not meet the statutory requirements of disability. Further, as noted by this Court in **Dishmon I**, "[t]his Court cannot attempt to weigh the credibility of Dishmon . . . . The Appeals Committee was the trier of facts in this case, and it had the opportunity to look the witnesses in the eyes to determine credibility." *Pub. Employees' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 893 (Miss. 2001). Given all of the above, I fail to see how PERS ignored substantial evidence in reaching its conclusion.

¶54. The majority references *Public Employees' Retirement System v. Dearman*, 846 So. 2d 1014 (Miss. 2003), for the proposition that, by not conducting an independent evaluation, PERS ignored the only evidence in the record. The controlling statute, Section 25-11-113, makes it abundantly clear that PERS is under no obligation to conduct an independent medical evaluation. According to the statute, an employee who has at least four years of membership service credit (beginning prior to July 1, 2007) may receive disability retirement allowance:

> provided that the medical board, after an evaluation of medical evidence that may **or may not** include an actual physical examination by the medical board, certifies that the member is mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired. . . .

Miss. Code Ann. § 25-11-113(1)(a) (Rev. 2006) (emphasis added).

¶55. I find Justice Cobb's dissent in *Dearman* to be sound. *Dearman*, 846 So. 2d at 1019-22 (Cobb, J., dissenting). In *Dearman*, as in this case, the Court effectively reweighed the evidence, substituting its opinion for that of PERS, and literally shifted the burden to PERS to present evidence. *Id.* at 1020-21. Justice Cobb eloquently spoke to the difficulties posed by these cases when she stated:

Cases like Dearman's are hard ones to decide. A claimant professes to be in great pain so that she can no longer work. It is difficult to evaluate such claims: legitimately disabled persons are entitled to relief, but on the other hand, if PERS is required to credit every such claim before it, then it may as well close up shop and just write checks. Such hard cases and close calls are best made by the administrative agency with the professional skills, the daily experience, and the face-to-face opportunity to evaluate these close calls. That is why administrative agencies exist; why we regularly defer to their findings; and why the majority errs in deciding, on a cold record, that judicial opinions outweigh medical ones.

*Id*. at 1022.

¶56.   For all the aforementioned reasons, I respectfully dissent.