MAXWELL, J.,
for the Court:
¶ 1. When faced with conflicting medical evidence of a member’s disability, the Public Employees’ Retirement System (PERS) is tasked with weighing the evidence and deciding whether the member is entitled to disability retirement benefits. If PERS finds a member is not disabled, and its decision is supported by substantial evidence, neither the circuit court nor the appellate court may inject its own judgment. This is true even if the courts would have weighed the evidence differently or arrived at a different decision. Here, the circuit judge reversed PERS’s denial of Sherry Walker’s claim for disability retirement benefits and entered an order awarding Walker these benefits. Because our review shows sufficient medical evidence supported PERS’s conclusion that Walker was not disabled, we reverse and render the judgment of the circuit court and reinstate PERS’s order denying disability benefits.
Facts and Procedural History
¶ 2. Walker taught school in the South Pike School District for thirteen years. On January 20, 1998, she fell during a classroom demonstration, injuring her hands, neck, and lower back. Shortly after, she voluntarily resigned from her teaching position and applied for duty-related disability benefits with PERS. Walker later amended her application to also request regular disability benefits.
¶ 3. Walker’s personal medical diary documented she had suffered back pain as early as 1964, maybe earlier. And she had been treated and diagnosed with similar preexisting medical conditions before her fall. She claimed the classroom fall exacerbated her preexisting degenerative disease and fibromyalgia. Though Walker alleged she could no longer write, bend, walk, or sit for an extended time, South Pike’s superintendent maintained, based on his personal observations of Walker in the classroom, that she could still perform teaching duties because she could sit or stand as needed throughout the day.
¶ 4. After her fall, Walker visited numerous physicians. She initially sought treatment from Dr. Edward Long, a chiropractor, who found Walker’s fall “aggravated, accelerated, and agitated previous symptoms which continue to keep her disabled.” He diagnosed her with a lumbro-sacral sprain, lumbar radiculitis, and eervico-bra-chial syndrome and assigned a fifty-one percent impairment rating to her body as a whole. Dr. Long found she could not climb stairs or walk for short distances, and he considered Walker’s disability permanent.
¶ 5. Walker then saw Dr. Alan Freeland, an orthopedic surgeon, for wrist and hand problems. Dr. Freeland found a majority of Walker’s problems were “systemic.” And though he found a “slightly mobile mass at the volar radial side of the left wrist,” he concluded “the remainder of the examination of the hands and wrists [was] essentially normal.” Walker declined Dr. Freeland’s recommendation to either aspirate or surgically remove the mass.
¶ 6. On May 5, 1998, Dr. James Hughes, another orthopedic surgeon, evaluated Walker for back and neck problems. He found that Walker had some discomfort in her right hip and that her lumbar spine showed some signs of loss of motion and lateral rotation. Responding to a later request from Walker’s insurance provider, Dr. Hughes observed that “[Walker] has serious preexisting conditions that certainly may prevent her from returning to [even light-duty work.” But he was careful to note — “[f]or this, her other physician should be consulted.”
¶ 7. Walker’s rheumatologist, Dr. James Hensarling, who had treated her both be *907 fore and after her fall, submitted a report to PERS. His report confirmed that Walker suffered from fibromyalgia and that her blood work had shown a positive antinuclear antibody (ANA) test — -typically indicative of systemic lupus, an autoimmune disease. But Dr. Hensarling provided no prognosis. Nor did he place Walker under any restrictions. When asked whether Walker’s disability was permanent, Dr. Hensarling simply wrote, “N/A.”
¶ 8. Dr. Henry Lewis, Walker’s primary-care physician, agreed with Dr. Hensar-ling’s diagnosis of fibromyalgia and the positive ANA test. He further found Walker suffered from “chronic arthralgia” and “acute hyperlipidemia.” But unlike Dr. Hensarling, Dr. Lewis concluded Walker was permanently disabled because there is “no known cure” for her conditions. He did acknowledge, however, that Walker could still drive, climb stairs, and walk short distances without issue.
¶ 9. On November 12, 1998, Dr. Robert Van Uden independently examined Walker at her private disability carrier’s request. He concluded Walker “is currently unable to work as a full-time elementary school teacher,” but “might be able to engage in some sort of limited teaching or educational role, so long as she did not have prolonged standing, sitting, or repetitive bending.” He found Walker’s “fibromyal-gia, lupus, and chronic fatigue syndrome contributed extremely significantly to her overall disability,” while her 1998 classroom fall accounted for only “ten percent or so to her current disability.”
¶ 10. After reviewing and weighing the varied medical evidence, the PERS Medical Board denied Walker’s request for benefits. Walker appealed to the PERS Disability Appeals Committee (DAC), which after considering testimony about her medical history and present condition, also concluded Walker’s medical diagnoses were not sufficiently severe to prevent her from performing her normal work duties. Because the DAC found Walker had not satisfied her burden, it recommended the PERS Board of Trustees deny her request. The Board of Trustees adopted the DAC’s recommendation, and Walker appealed to the Hinds County Circuit Court.
¶ 11. On appeal, the circuit court reversed the Board of Trustees’ decision, finding PERS’s denial of benefits was not supported by substantial evidence. According to the circuit court, PERS imper-missibly ignored “a number of evaluations from treating doctors [who] all agreed that Walker was in no condition to return to work.” PERS now appeals.
Standard of Review
¶ 12. “Regardless of the conclusion of the circuit court, our review focuses on the agency decision.” Bynum v. Miss. Dep’t of Educ., 906 So.2d 81, 91 (¶ 19) (Miss.Ct.App.2004) (citing Miss. Dep’t of Corr. v. Harris, 831 So.2d 1190, 1192 (¶ 5) (Miss.Ct.App.2002)). And our review of an administrative agency’s decision is limited. Pub. Employees’ Ret. Sys. v. Howard, 905 So.2d 1279, 1284 (¶ 13) (Miss.2005) (citing Pub. Employees’ Ret. Sys. v. Marquez, 774 So.2d 421, 425 (¶ 11) (Miss.2000)). We will not disturb the agency’s decision unless it: “(1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates [the claimant’s] constitutional rights.” Pub. Employees’ Ret. Sys. v. Dishmon, 17 So.3d 87, 91 (¶ 18) (Miss.2009) (citing Marquez, 774 So.2d at 425 (¶ 11)).
¶ 13. “There is a rebuttable presumption in favor of a PERS ruling.” Pub. Employees’ Ret. Sys. v. Dishmon, 797 So.2d 888, 891 (¶ 9) (Miss.2001) (citing Brinston v. Pub. Employees’ Ret. Sys., 706 So.2d 258, 260 (¶ 6) (Miss.Ct.App.1998)). It is impermissible for an appellate or *908 circuit court “to substitute its own judgment for that of PERS.” Id. Reviewing courts are also precluded from reweighing the facts of the case. Id.
Discussion
¶ 14. PERS argues the circuit court impermissibly reweighed the facts and substituted its judgment for the administrative agency’s. PERS insists the Board of Trustees’ decision to deny disability benefits was based on substantial evidence and should be reinstated. Walker contends, however, PERS ignored objective evidence of her disability and inexplicably failed to seek an independent medical examination.

Available Benefits and Disability Determination

¶ 15. There are two possible categories of benefits available to PERS members who have been deemed disabled — (1) regular disability benefits, payable to members with least four years of creditable service who become disabled for any reason; and (2) “hurt-on-the-job disability benefit, payable to members regardless of the number of years of creditable service, where the member becomes disabled due to an injury occurring” in a work-related accident. Dishmon, 17 So.3d at 92 (¶ 21) (citing Pub. Employees’ Ret. Sys. v. Stamps, 898 So.2d 664, 672 (¶ 24) (Miss.2005)). But before awarding either of these types of benefits, PERS must determine whether the member is disabled. Miss.Code Ann. § 25-ll-113(l)(a) (Supp.2012). This two-part statutorily mandated determination requires first that the PERS Medical Board certify the claimant is “mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired.” Miss.Code Ann. § 25 — 11—113(l)(a). And second, the Medical Board must apply the statutory definition of “disability,” which is:
[T]he inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the [PERS] that is actually offered and is within the same general territorial work area, without material reduction in compensation.
Id. (internal citation omitted). Unless the member is deemed disabled, she is neither entitled to regular disability benefits nor hurt-on-the-job disability benefits. Pub. Employees’ Ret. Sys. v. Dean, 983 So.2d 335, 339 (¶ 16) (Miss.Ct.App.2008).
¶ 16. After sifting through competing medical records, PERS found that Walker was not disabled. So we must focus our inquiry on whether the record contains substantial evidence to support PERS’s decision. “Substantial evidence means something more than a ‘mere scintilla’ or suspicion.” Marquez, 774 So.2d at 425 (¶ 13) (citing Miss. Real Estate Comm’n v. Anding, 732 So.2d 192, 196 (¶ 13) (Miss.1999)). Substantial evidence has been further defined “as such relevant evidence as reasonable minds might accept as adequate to support a conclusion.” Id.
¶ 17. The DAC found Walker’s medical records, like those of many claimants with extensive and complicated medical histories, contained conflicting opinions as to whether she was disabled. The DAC specifically noted:
There are a lot of records in this file and several contrary opinions, several opinions about what is going on with Ms. Walker, and what is her prognosis. We recognize this. But given the total picture with the testimony of Ms. Walker, our observations of her, her choice of *909 doctors and their specialties, the length of time they followed her, her medical records, specifically the objective MRIs and blood work, x-rays and the like, [and] this Committee’s own knowledge and experience, we believe that the most accurate assessment here is that Ms. Walker probably does have connective tissue disease[,] but she should be able to continue teaching.
The DAC acknowledged that Dr. Van Uden believed Walker was disabled as a result of fibromyalgia, lupus, and chronic fatigue syndrome. But it emphasized his lack of verification of these symptoms, noting his lack of “access to all of the lab work and testing that [the DAC had] in this record....” As the DAC saw it, “Dr. Van Uden’s opinion that Ms. Walker was disabled was fine for the insurance company, but when we consider his evaluation in light of the SED [sedimentation] rates, the ANA testing and the lack of any evidence of trigger points, his opinion carries less weight.”
¶ 18. As to Dr. Lewis, Walker’s primary-care physician, the record shows he indicated Walker could still drive, climb stairs, and walk short distances. Yet he reported to PERS that Walker’s fibro-myalgia and autoimmune diseases rendered her permanently disabled. He diagnosed Walker with “chronic fibromyalgia,” “chronic arthralgia,” “chronic positive antinuclear [antibody test],” and “acute hyper-lipidemia.” When asked to give reasons supporting his conclusion, Dr. Lewis wrote there is “no known cure — treat symptoms only.” We can only presume Dr. Lewis was referring to fibromyalgia, rather than Walker’s other conditions.[1] However, a diagnosis of fibromyalgia, or any other disease for that matter, does not itself render a person disabled. Rather, “disability” pertains to a person’s inability to perform certain tasks or duties. Miss. Code Ann. § 25-ll-113(l)(a).
¶ 19. Dr. Hensarling, an expert on fi-bromyalgia and autoimmune diseases, who also submitted a report to PERS, offered a contrary opinion. While he, too, diagnosed Walker with fibromyalgia and a positive ANA test, Dr. Hensarling, unlike Dr. Lewis, did not conclude Walker was permanently disabled. Dr. Hensarling determined Walker could drive a car, climb stairs, and walk short distances. The DAC placed much emphasis on the fact Dr. Hensarling placed no restrictions on Walker. And while Dr. Hughes, an orthopedic surgeon, had earlier noted Walker’s preexisting conditions “certainly may prevent her from returning to work,” he was uncomfortable in labeling her disabled, and instead recommended: “For this, her other physician should be consulted.”
¶ 20. PERS’s fact-finding duties include evaluating the credibility of witnesses. Case v. Pub. Employees’ Ret. Sys., 973 So.2d 301, 311 (¶ 23) (Miss.Ct.App.2008). And when evaluating “stark[ly] contrasting]” medical opinions, it is PERS’s job “to determine which of these assessments to rely on in making its decision.” Byrd v. Pub. Employees’ Ret. *910 Sys., 774 So.2d 434, 438 (¶ 15) (Miss.2000). Although PERS is under no obligation to request an independent medical evaluation, its decision not to do so “may constitute a factor in determining whether or not the agency has presented sufficient evidence to support its finding that the claimant is not disabled.” Dishmon, 17 So.3d at 93 (¶ 24).
¶ 21. Having vetted the contrasting, and in some instances contradictory, medical opinions over the disabling nature of Walker’s fibromyalgia and other ailments, the DAC was obviously most swayed by Walker’s rheumatologist, Dr. Hensarling. The DAC noted, “the expert in this field[, Dr. Hensarling,] did not want to limit her activity, because these types of diseases wax and wane[,] and if she will continue to work and take her medication, she will get better.” Based on its evaluation of all the information, including “the records and the testimony of Ms. Walker herself and her ability to sit quite some time during the hearing,” the DAC denied disability benefits.
¶ 22. We find Walker’s medical records contain sufficient medical evidence contradicting her disability claims. Although Drs. Lewis and Van Uden, as well as her chiropractor, concluded Walker was disabled, Dr. Hensarling, an expert on fi-bromyalgia and autoimmune diseases, who had treated Walker both before and after her fall, placed no restrictions on her — a fact the DAC found “most telling.”
¶ 23. This is admittedly a close case. But considering Dr. Hensarling’s report and notes alone, we find PERS based its decision on more than a mere scintilla of evidence or speculation. Thus, substantial evidence supports PERS’s denial of both regular and duty-related benefits.[2] While we might have weighed the conflicting evidence quite differently than PERS, “there is a rebuttable presumption in favor of a PERS ruling.” Smith, 880 So.2d at 351 (¶ 13) (citation omitted). And neither an appellate nor circuit court may substitute its own judgment for PERS’s. Dishmon, 17 So.3d at 91 (¶ 18). Because we find the circuit court impermissibly reweighed the evidence in reversing PERS’s denial of benefits, we reverse and render the judgment of the circuit court and reinstate PERS’s order.
¶ 24. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. RUSSELL, J„ CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. First, arthralgia literally means joint pain and is a symptom, not a disease. Stedman's Medical Dictionary 149 (26th ed.1995). Second, an antinuclear antibody test screens for autoimmune diseases, but a positive ANA test is not a disease in and of itself. "While an ANA test can't confirm a specific diagnosis, it can rule out some possible diseases. And if the ANA test is positive, your blood can be tested for the presence of particular antinuclear antibodies, some of which are specific to certain diseases.” ANA test, Mayo Clinic, http://ww w.mayoclinic.com/health/ana-test/MY00787/DSECTION=why-its-done (last visited Dec. 5, 2012). Lastly, hyperlipidemia is a general term for "the presence of an abnormally large amount of lipids [ (fats) ] in the circulating blood.” Stedman’s Medical Dictionary 985 (26th ed.1995).

. To recover duty-related benefits under Mississippi Code Annotated section 25-11-114(6) (Supp.2012), Walker had the burden of proving her disability was the direct result of either an accident or a "traumatic event.” We find substantial evidence supports PERS's decision to deny duty-related benefits because the record clearly shows Walker’s complaints of back and neck pain predate her work-related accidents by over thirty years. See Pub. Employees’ Ret. Sys. v. Smith, 880 So.2d 348, 351 (¶ 13) (Miss.Ct.App.2004) (finding substantial evidence supported PERS's finding that the claimant's disability was not the direct result of his work-related accident because he had a significant history of multiple back injuries, accidents, and medical treatments); Brinston, 706 So.2d at 260 (¶ 9) (finding there was sufficient evidence to support PERS's finding that the claimant's disability was not the direct result of her accident because many other factors may have contributed to or caused her condition and disability).